*1499
 
 OPINION
 

 Per Curiam:
 

 Thomas Barrett contracted chicken pox. Mr. Barrett was not feeling well and went to respondent St. Rose de Lima Hospital (Hospital). There he was seen by respondent Dr. George Baird who, after performing several tests and prescribing treatments for Mr. Barrett, released Mr. Barrett from the hospital. That night, Mr. Barrett became delirious. He was rushed to the hospital and placed on a respirator, but the hospital did not have sufficient facilities to continue treating Mr. Barrett. Mr. Barrett was then transferred to the University Medical Center (Center).
 

 At the Center, respondent Dr. Byron Brown treated Mr. Barrett. One of the treatments prescribed was a dialysis. Respondent Dr. Marvin Bernstein supervised the dialysis. During dialysis, Mr. Barrett had a cardiorespiratory arrest. As a result, he suffered severe brain damage and eventually died.
 

 Appellant Peggy Barrett (Barrett), Mr. Barrett’s wife, commenced an action for medical malpractice. Barrett claimed that Mr. Barrett’s death was the result of the combined effects of (1) the negligent failure of Dr. Baird, as an agent of the Hospital, to admit Mr. Barrett to the Hospital on January 26, 1989, when, she claims, there was clear medical evidence that his chicken pox had disseminated and that he was developing varicella pneumonia and secondary infections due to the virus, and (2) Drs. Brown and Bernstein’s negligent failure to diagnose and correct a massive bleed into Mr. Barrett’s left pleural space, and Dr. Bernstein’s negligent dialyzing of Mr. Barrett when he was hemodynamically unstable, due to the bleed.
 

 Barrett commenced her action in accord with NRS 41A.016 by filing a petition before the Medical-Legal Malpractice Screening Panel (the screening panel) against Dr. Baird and the Hospital. Subsequent to a finding of no probability of negligence by the panel, Barrett filed a second petition with the panel against Drs. Brown and Bernstein. This panel, like the first, returned a finding of no probability of negligence as to the named physicians.
 

 
 *1500
 
 Despite the respective panel findings of no probability of negligence, Barrett brought a wrongful death action against Dr. Baird, the Hospital, Dr. Brown, and Dr. Bernstein, alleging medical malpractice in the treatment of her husband. The panel findings were introduced into evidence. A unanimous jury found that the defendants were not negligent. Judgments were entered in favor of all defendants for costs and attorney fees pursuant to NRS 41A.056(2).
 

 Barrett filed two separate motions for a new trial — one based on asserted errors that occurred at trial and the other challenging the constitutionality of the screening panel statute. Both motions were denied. Barrett renews her denied challenges on appeal. Specifically, Barrett claims the screening panel statute is unconstitutional because it violates the right to a jury trial, equal protection, separation of powers, and due process. Furthermore, she claims that the district court abused its discretion in not granting her a new trial because opposing counsel engaged in discovery misconduct, made a remark about the high cost of health care, made an improper “golden rule” argument, showed the jury a picture of one of counsel’s family, conducted a scientific demonstration during opening statement without laying foundation and then stated in closing argument that Barrett failed to refute the experiment, and, finally, improperly referred to the screening panel as an expert witness. Barrett also claims that the district court should have excluded evidence that she remarried.
 

 We conclude that the screening panel statute is constitutional. Nevertheless, we reverse the lower court’s judgment and award of attorney fees in favor of respondents on the grounds that the district court abused its discretion in failing to grant Barrett a new trial due to respondents’ counsels’ misconduct. NRCP 59(a)(2).
 

 Respondents first claim that Barrett is precluded from raising her constitutional challenges on appeal to this court because they were not raised at trial. Failure to object below bars review on appeal. Old Aztec Mine, Inc. v. Brown, 97 Nev. 49, 52-53, 623 P.2d 981, 983-84 (1981). However, this court may address constitutional issues raised for the first time on appeal.
 
 See
 
 McCullough v. State, 99 Nev. 72, 74, 657 P.2d 1157, 1158 (1983). We do so here.
 

 7.
 
 Right to a Jury Trial
 

 NRS 41 A.049(2) and NRS 41A.016(2) provide that the screening panel’s decision is admissible at trial and that the panel may base that decision on medical records and expert witnesses, some
 
 *1501
 
 of which may contain hearsay that would be inadmissible at a trial.
 
 [1]
 
 However, the statutes do not provide a claimant before a screening panel the opportunity to cross-examine any witnesses. Furthermore, panel members may not be deposed or subpoenaed regarding their decisions, nor may the panel’s decision be subject to collateral review by a district court.
 
 See
 
 Phelps v. District Court, 106 Nev. 917, 921, 803 P.2d 1101, 1103 (1990).
 

 Barrett asserts that the screening panel statute violates her constitutional right to a jury trial by allowing the screening panel to “preadjudicat[e] the issues of negligence and causation based on incompetent evidence (affidavits) and in the absence of cross-examination.” She argues that the jury is pot aware that the panel’s decision is based on evidence which would not otherwise be admissible and which a plaintiff was not able to attack. She claims that the logical tendency is for a jury to overvalue the weight of the panel finding when the judge instructs the jury on the decision of “a panel of experts.” Thus, she concludes that introduction of the panel’s decision at trial substantially burdens her and other claimants’ constitutional right to a jury trial.
 

 We hold that the panel’s consideration of otherwise inadmissible evidence not subject to cross-examination, the inability to depose or subpoena members of the panel, and the lack of judicial review of panel decisions do not violate Barrett’s or any malpractice claimant’s constitutional right to a jury trial. Article 1, Section 3 of the Nevada Constitution states in pertinent part: “The right of trial by jury shall be secured to all and remain inviolate forever; . . ,”
 
 [2]
 
 In sum, the Nevada Constitution guarantees “the right to have factual issues determined by a jury.” Drummond v. Mid-West Growers, 91 Nev. 698, 711, 542 P.2d
 
 *1502
 
 198, 207 (1975).
 
 [3]
 
 This court has held that the correct standard for evaluating whether a statute unconstitutionally restricts the right to a jury trial is that the right ‘“must not be burdened by the imposition of onerous conditions, restrictions or regulations which would make the right practically unavailable.’” Williams v. Williams, 110 Nev. 830, 833, 877 P.2d 1081, 1083 (1994) (quoting Application of Smith, 112 A.2d 625, 629 (Pa. 1955)). We hold that the screening panel statute does not make a medical malpractice claimant’s right to a jury trial practically unavailable because it does not undermine the guarantee that a jury will find the facts.
 

 Barrett first claims that the screening panel statute denies her right to a jury trial because jurors will overvalue the weight of the panel’s decision without knowing that the panel’s decision relies on evidence that would be inadmissible at trial. This claim lacks merit. In Jain v. McFarland, 109 Nev. 465, 472, 851 P.2d 450, 455 (1993), this court held that the screening panel process “is not a full trial on the merits and should not be represented as such.” Indeed, NRS 41A.069,
 
 [4]
 
 which sets out jury instructions that a jury are to be given when panel findings are introduced at trial, clearly indicates that the panel’s recommendation is, in
 
 *1503
 
 effect, “an expert opinion which is to be evaluated by the jury in the same manner as it would evaluate any other expert opinion.”
 
 [5]
 
 Comiskey v. Arlen, 390 N.Y.S.2d 122, 126 (App. Div. 1976),
 
 aff’d
 
 372 N.E.2d 34 (N.Y. 1977). In Nevada, as in most jurisdictions, experts may rely on evidence that is otherwise inadmissible at a trial even when testifying before a jury as to an ultimate issue such as negligence.
 
 [6]
 
 NRS 41A.100, 50.285, 50.295. A jury is free to accept or reject that expert’s opinion. Therefore, the fact that the screening panel’s decision is introduced to the jury does not infringe on the jury’s fact-finding duty even though the panel decision is based on otherwise inadmissible evidence.
 

 In a recent federal court decision, Wray v. Gregory, 61 F.3d 1414 (9th Cir. 1995), referring to Nevada’s screening panel statute, the Ninth Circuit, in dictum, questioned whether relying solely on the statutorily-mandated instruction that the jury “weigh the screening panel’s findings as it would ‘any other evidence’” satisfied the Nevada and federal constitutions.
 
 Id.
 
 at 1419. The Ninth Circuit suggested, “a judge would be well advised to supplement that instruction” by pointing out that the screening panel procedure is only “a summary process” and that the panel’s findings should not be given “undue weight.”
 
 Id.
 
 the court concluded that the jury should be instructed “in a manner that will ensure that the evidence of the outside panel’s conclusions does not ‘interpose [an] obstacle to a full contestation of all the issues, and take[] [a] question of fact from . . . the jury.’ ”
 
 Id.
 
 (quoting Meeker v. Lehigh Valley R.R. Co., 236 U.S. 412, 430 (1915)). We concur in the reasoning of the Ninth Circuit. In any
 
 *1504
 
 event, we note that the suggestion in the
 
 Wray
 
 dictum concerning supplemental instructions was implemented in this case and, therefore, the instructions given in the instant case were constitutionally sufficient.
 
 [7]
 

 Barrett also claims that a claimant’s right to a jury trial is burdened by the fact that a claimant may not cross-examine the evidence reviewed by the screening panel at the meeting of the panel, depose or subpoena panel members, or seek judicial review of the panel decision. We hold that this does not burden Barrett’s or any claimant’s right to a jury trial. As already noted, the panel’s decision is merely an expert opinion. Pursuant to NRS 41A.056(2), a plaintiff is free to bring a complaint and present her case to a jury despite the panel’s decision.
 
 [8]
 
 The panel’s decision may be offered as evidence at trial along with other expert witness testimony, and should the plaintiff so choose, the same expert witnesses and exhibits can be presented to the jury as were presented to the screening panel. NRS 41A.016; 41A.069;
 
 see Jain,
 
 109 Nev. at 473, 851 P.2d at 455. As stated by the court in Lacy v. Green, 428 A.2d 1171, 1176 (Del. 1981) (quoting Suchit v. Baxt, 423 A.2d 670, 675 (N. J. Super. Ct. Law Div. 1980)), interpreting a statute similar to Nevada’s screening panel statute:
 

 [The panel] cuts off no defense, interposes no obstacle to full contestation of all the issues, and takes no question of fact from either court or jury. . . . “Although the panel decision is evidential, and this evidence would not exist but for [the screening panel,] plaintiff[s are] free to attack and impeach the panel determination by competent evidence.”
 

 Indeed, in the instant case, at trial, Barrett’s counsel cross-examined expert witnesses who submitted affidavits to the screening panel. Therefore, we conclude that the screening panel statute does not impede a claimant from attacking the basis for the
 
 *1505
 
 conclusions of the panel before a jury and, thus, does not violate the right to a jury trial.
 

 In Eastin v. Broomfield, 570 P.2d 744 (Ariz. 1977), the Arizona Supreme Court held that the admission of a medical malpractice screening panel’s decision at trial did not violate the plaintiffs right to a jury trial guaranteed by the Arizona Constitution. The Arizona statute also provided that the panel’s decision could be admitted into evidence at trial for consideration by the jury along with other evidence. Finding no constitutional infirmity, the court emphasized that “[t]he jury remains the final arbiter of the issues raised and the facts presented.”
 
 Id.
 
 at 748. Other jurisdictions have upheld medical malpractice screening statutes similar to Nevada’s and have espoused the same rationale.
 
 [9]
 

 Since the parties are in no way precluded from impeaching the panel’s conclusion by competent evidence, or from showing that relevant evidence was not presented to the panel or from demonstrating the limited nature of the panel proceeding, we conclude that there is no valid concern that jurors will “overvalue” the panel findings. For purposes of the constitutional right to jury trial, the jury is and remains the final arbiter. Therefore, wé hold that the Nevada screening panel statute does not eviscerate a claimant’s right to a jury trial.
 

 Barrett further argues that NRS 41A.016(2) violates the jury
 
 *1506
 
 trial right because she claims it imposes on selected litigants, as a prerequisite to a jury trial, a process that strips a court of its constitutionally-protected authority to admit or reject evidence. Indeed, the provision of NRS 41A.016(2) which states that “[t]he written findings of the screening panel are admissible” is mandatory and a trial court has no discretion to refuse to introduce the panel’s finding. Truck Insurance Exchange v. Tetzlaff, 683 F. Supp. 223, 226 (D. Nev. 1988) (citing Jain, 109 Nev. at 470 n.4, 851 P.2d at 454 n.4).
 

 However, we hold that the mandate that a panel’s finding be introduced does not deprive medical malpractice claimants of their right to a jury trial. Several courts have adopted the position that statutory provisions governing the admissibility of nonbinding screening panel findings are essentially evidentiary rules allowing an expert opinion as a hearsay exception.
 
 See, e.g.,
 
 Hines v. Elkhart General Hospital, 465 F. Supp. 421, 428 (N.D. Ind.),
 
 aff’d
 
 603 F.2d 646 (7th Cir. 1979). A legislature clearly has the power to enact rules of evidence.
 
 Comiskey,
 
 390 N.Y.S.2d at 126. Nevada law is in accord. NRS 47.020-55.030;
 
 see
 
 White v. State, 83 Nev. 292, 296, 429. P.2d 55, 57 (1967) (legislature has power to establish rational evidentiary inferences and presumptions); Galloway v. Truesdell, 83 Nev. 13, 20, 422 P.2d 237, 242 (1967). Moreover, “the admissibility of the panel’s findings is constitutionally unobjectionable because litigants have no vested rights in particular rules of evidence.” State
 
 ex rel.
 
 Strykowski v. Wilkie, 261 N.W.2d 434, 451 (Wis. 1978) (citation omitted). Thus, we conclude that the screening panel statute is not constitutionally infirm simply because it mandates the introduction of the panel’s finding at trial.
 

 Barrett also impliedly argues that the requirement of NRS 41A.056(2) that attorney fees be mandatorily imposed against claimants whose claims are rejected before the screening panel and who lose at trial restricts the right to a jury trial.
 
 [10]
 
 Barrett’s amici more explicitly make this argument. The amici argue that the attorney fees provision renders the right to a jury trial “practically unavailable,” citing
 
 Williams,
 
 110 Nev. at 833, 877 P.2d at 1083, by “chilling” access to the courts because of the enormous financial consequences if one fails at trial.
 
 [11]
 
 Indeed, the
 
 *1507
 
 judgment for attorney fees against Barrett in this case was $876,604.72.
 
 [12]
 

 We conclude that Barrett and amici’s argument that NRS 41A.056(2) is constitutionally defective lacks merit. First, the American rule that each party pays its own attorney fees “has no constitutional basis” and “may be abrogated by contract, statute or Court rule providing for an award of attorney’s fees.” Gordon v. Marrone, 590 N.Y.S.2d 649, 653 (Sup. Ct. 1992),
 
 aff’d
 
 616 N.Y.S.2d 98 (App. Div. 1994),
 
 appeal denied,
 
 647 N.E.2d 453 (N.Y. 1995). In fact, the Nevada legislature has not hesitated to modify the American rule by enacting statutes allowing or requiring an award of attorney fees to prevailing parties under certain conditions.
 
 See, e.g.,
 
 NRS 17.115, 18.010(2)(a), 69.030. Second, the right of malpractice plaintiffs to sue for damages caused by medical professionals does not involve a fundamental constitutional right. Everett v. Goldman, 359 So. 2d 1256, 1268 (La. 1978). In such cases, “access [to the court] may be hindered if there exists a rational basis for doing so.” Linder v. Smith, 629 P.2d 1187, 1190 (Mont. 1981). In other words, constitutional “right of access” challenges that do not implicate a fundamental right are subjected to the lowest level of judicial scrutiny — the “rational basis” test.
 
 Everett,
 
 359 So. 2d at 1269. Applying this standard, the Florida Supreme Court flatly rejected the argument amici make here. Florida Patient’s Compensation Fund v. Rowe, 472 So. 2d 1145, 1146 (Fla. 1985).
 
 [13]
 

 
 *1508
 
 Acknowledging the principle of deference to the legislature in the context of the screening panel statute as a whole, this court has observed: “We hesitate to disturb or question carefully crafted legislation which balances various concerns to arrive at a structure that will fairly benefit all the parties to a medical malpractice suit, limit the burdens on the judicial system, and reduce health care costs by discouraging frivolous litigation.”
 
 Jain,
 
 109 Nev. at 472, 851 P.2d at 455. In
 
 Jain,
 
 this court stated: “The purposes of the screening panel are to minimize frivolous suits against doctors, to encourage settlement, and to lower the cost of malpractice premiums and health care.”
 
 Id.
 
 at 471, 851 P.2d at 455.
 

 We hold that NRS 41A.056(2) is rationally related to those legitimate purposes.
 
 [14]
 
 First, the provision attempts to minimize meritless suits against doctors by encouraging plaintiffs to carefully consider the likelihood of prevailing in court after at least four members of the screening panel — composed of three doctors and three members of the Nevada Trial Lawyers Association— have found “no reasonable probability” of malpractice.
 
 [15]
 
 Second, the provision attempts to encourage settlement in two ways when a claimant is successful before the screening panel: (1) by encouraging defendants to settle by offering an amount equal to the value of the claim as determined by the judge, rather than risk being assessed attorney fees and costs if the plaintiff recovers a larger amount at trial, and (2) by motivating successful claimants to accept such offers, rather than risk being assessed attorney fees and costs if a lesser amount is recovered at trial. NRS 41A.059(4), (5). Third, by attempting to minimize meritless suits and encourage settlement, the provision attempts to “lower the costs of malpractice premiums and health care.”
 
 Jain,
 
 109 Nev. at 471, 851 P.2d at 455. Thus, the attorney fees provision of the screening panel statute neither denies Barrett nor other claimants a right to a jury trial, nor irrationally impedes claimants’ access to the courts.
 
 [16]
 

 
 *1509
 
 2.
 
 Equal Protection
 

 Barrett contends that NRS 41A.009 and NRS 41A.016 deny medical malpractice victims equal protection under the Fourteenth Amendment to the U.S. Constitution and Article 4, Section 21 of the Nevada Constitution. NRS 41A.016 provides: “No cause of action involving medical malpractice may be filed until the medical malpractice case has been submitted to an appropriate screening panel. . . .” NRS 41A.009 states: ‘“Medical malpractice’ means
 
 the failure of a physician, hospital or employee of a hospital,
 
 in rendering services, to use the reasonable care, skill or knowledge ordinarily used under similar circumstances.” (Emphasis added.)
 

 Barrett does not claim that her right to bring an action for the wrongful death of her husband is a “fundamental right,” nor does she claim that a “suspect classification” is involved. However, Barrett asserts that there is no rational reason that the victims of medical negligence by physicians and hospitals be subjected to the burdens of the panel when injured patients of other health care providers are not.
 

 We reject Barrett’s contention. The screening panel statute’s requirement that the screening panel process apply to malpractice suits against individual physicians and hospitals, but not to malpractice suits against other health care providers, has a rational basis and, therefore, is not a violation of equal protection. The Fourteenth Amendment to the U.S. Constitution forbids an enactment that “denies any person . . . equal protection of the laws.” Article 4, Section 21 of the Nevada Constitution requires that all laws be “general and of uniform operation throughout the state.” The standard for testing the validity of legislation under the equal protection clause of the state constitution is the same as the federal standard. Laakonen v. District Court, 91 Nev. 506, 538 P.2d 574 (1975).
 

 As Barrett acknowledges, where, as here, no “fundamental right” or “suspect classification” is implicated, this court “scru-tiniz[es] the challenged legislation for foundational support containing an ingredient of rational basis.” Allen v. State Pub. Emp. Ret. Bd., 100 Nev. 130, 136, 676 P.2d 792, 795-96 (1984). This court will not overturn legislation unless the treatment of different groups “ ‘is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the
 
 *1510
 
 legislature’s actions were irrational.”’
 
 Id.
 
 (quoting Vance v. Bradley, 440 U.S. 93, 97 (1979)). “If any state of facts may reasonably be conceived to justify [the legislation], a statutory discrimination will not be set aside.” State v. District Court, 101 Nev. 658, 662, 708 P.2d 1022, 1025 (1985) (citation omitted).
 

 We conclude that the fact that the screening panel statute does not apply to all health care providers, but only to physicians, hospitals and hospital employees, is a rational legislative choice. Evidence before the legislature demonstrated that physicians and hospitals were experiencing enormous hikes in malpractice insurance premiums; there was no such evidence concerning the insurance rates of other health care providers.
 
 [17]
 
 “Where there was evidence before the legislature reasonably supporting the classification, litigants may not procure invalidation of the legislation merely by tendering evidence in court that the legislature was mistaken.” Minnesota v. Clover Leaf Creamery Co., 449 U.S. 456 (1981).
 

 Nevada’s lawmakers could have concluded that physicians and hospitals were more affected by the perceived malpractice crisis than other health care providers, i.e., that they had more difficulty obtaining insurance, that their premiums were higher, that they bore more of the brunt of frivolous litigation, etc. “It is well-settled under rational basis scrutiny that the reviewing court may hypothesize the legislative purpose behind legislative action.” Boulder City v. Cinnamon Hills Assocs., 110 Nev. 238, 249, 871 P.2d 320, 327 (1994) (citations omitted). It is equally well-settled, as stated by the California Supreme Court, that “the equal protection clause does not prohibit a legislature from implementing a reform measure ‘one step at a time’. . . or prevent it ‘from striking the evil where it is felt most.’ ” American Bank and Trust Co. v. Community Hosp. of Los Gatos-Saratoga, 683 P.2d 670, 677 (Cal. 1984) (holding statute intended to alleviate malpractice crisis did not violate equal protection). In any event, this court already stated in
 
 Jain
 
 regarding the screening panel statute that it hesitates to question or disturb carefully crafted legislation which fairly balances the interests involved in a medical malpractice suit and limits the judicial system’s burdens and health care costs by discouraging frivolous litigation. 109 Nev. at 472, 851 P.2d at 455. Therefore, we hold that the distinction created by NRS 41 A.009 and NRS 41A.016 is rationally related to a legiti
 
 *1511
 
 mate governmental interest and does not violate equal protection.
 
 [18]
 

 3. Separation of Powers
 

 In support of her claim that the screening panel statute violates the separation of powers doctrine,
 
 [19]
 
 Barrett essentially recycles her contentions about the constitutionality of NRS 41A.016(2), 41A.049(2), and 41A.056(2) outlined in the foregoing analysis of the jury trial issue. She claims that the statute violates separation of powers by (1) creating a court (i.e., the screening panel), not authorized by the constitution, whose decisions are immune from collateral attack or review by the litigant or the constitutionally authorized courts, and (2) stripping the district courts of their authority to conduct trials by not allowing them to determine the competency and admissibility of evidence, instruct the jury, and award attorney fees in their discretion. We conclude that these arguments lack merit for the same reasons we outlined in the analysis of the jury trial issue.
 

 “ ‘Judicial power’ is the authority to hear and determine justi-ciable controversies” and any power that is “inherent or incidental” to that authority.
 
 Galloway,
 
 83 Nev. at 20, 422 P.2d at 242. The screening panel does not exercise judicial power and, therefore, the screening panel statute does not violate the separation of powers. In Nevada, the screening panel’s findings are not binding on anyone; they may merely serve as evidence at trial, and may be completely rejected by the jury.
 

 As to Barrett’s contention that the separation of powers is violated because the court is forced to admit the panel findings into evidence, to instruct the jury on those findings, and to award
 
 *1512
 
 attorney fees if warranted, we hold that it is within the constitutional province of the legislature to create evidentiary rules and to mandate attorney fees. Therefore, the screening panel statute does not violate separation of powers.
 

 4. Due Process
 

 In support of her claim that the screening panel statute violates due process, Barrett again recycles her contentions concerning the constitutionality of NRS 41A.016(2) and 41 A.049(2) outlined in our analysis of the jury trial issue. Because Barrett claims that her wrongftd death cause of action constitutes a property interest, she claims she is entitled to due process of law before she can be deprived of that interest. Barrett asserts that she and other claimants are denied due process because
 

 the legislature has created the framework to deprive the victims of medical negligence of a constitutionally protected property right —their cause of action — through a statute which relies on hearsay affidavits, the denial of the right to confront and cross-examine witnesses, a misleading jury instruction and the elimination of the right of judicial review and appeal.
 

 Article 1, Section '8 of the Nevada Constitution states, in pertinent part: “No person shall be . . . deprived of life, liberty, or property, without due process of law. ...” The Fourteenth Amendment to the U.S. Constitution contains a similar provision. Fundamental to due process of law is the opportunity to be heard in a meaningful manner and at a meaningful time. Goldberg v. Kelly, 397 U.S. 254, 267 (1970);
 
 see
 
 Wright v. Cradlebaugh, 3 Nev. 310, 316 (1867) (due process “not only requires that a party shall be properly brought into court, but that he shall have the opportunity when in court to establish any fact which, according to the usages of common law or the provisions of the constitution would be a protection to himself or his property”).
 

 We hold that the screening panel statute meets the requirements of due process.
 
 [20]
 
 First, this court has already determined, in the context of a declaratory judgment action:
 

 
 *1513
 
 The action of the screening panel does not involve the substantial right of any party to a medical malpractice action. If the plaintiff is unsuccessful in such an action, he may nonetheless pursue his suit to trial. If the defendant is unsuccessful, he may demand that his liability be determined at a trial.
 

 Phelps,
 
 106 Nev. at 921, 803 P.2d at 1103. Second, as already discussed in detail in this opinion, a plaintiff is given the opportunity to cross-examine any and all of the defense witnesses and experts that were presented to the panel at trial.
 
 [21]
 
 Moreover, a plaintiff can further point out to a jury that expert witnesses are being presented to the jury that were not presented to the screening panel. Further, a jury may accept or reject a screening panel’s finding and the finding carries no more weight than that of a single item of evidence. These procedures provide ample due process to Barrett and other claimants, as a federal court in Nevada has already concluded:
 

 The Nevada Screening Panel Statute, the preliminary procedures it dictates, and the admissibility of the Panel’s finding without further compelled testimony from the panelists, do not deprive plaintiff of due process rights. The Panel’s
 
 *1514
 
 finding is only one piece of evidence to be weighed in light of all other evidence. There is no deprivation of a property interest as a result of the Panel’s findings nor [do] the Panel decisions bind or impair the interests of the parties.
 

 Heredia v. Johnson, 835 F. Supp. 553, 554 (D. Nev. 1993).
 

 Thus, we hold that the screening panel statute withstands constitutional scrutiny. Nevertheless, we reverse the district court’s judgment in favor of respondents on the basis of respondents’ counsels’ misconduct at trial.
 

 5.
 
 Misconduct of the Prevailing Party
 

 We hold that the following conduct by respondents’ lawyers constituted misconduct, which, when taken together, deprived Barrett of a fair trial. First, Dr. Bernstein’s counsel asked Dr. Bernstein at trial for his opinion about the cause of death when he had specifically represented to Barrett’s counsel at Dr. Bernstein’s deposition that he would not ask that question at trial. Furthermore, during closing argument, Dr. Bernstein’s counsel misstated Dr. Bernstein’s testimony. Second, the Hospital’s counsel, in a rhetorical flourish, improperly and prejudicially stated during closing argument that the compensation sought by Barrett included the “kind of numbers that necessitate the high health care cost in this country.”
 
 See
 
 Davidoff v. Segert, 551 So. 2d 1274 (Fla. Dist. Ct. App. 1989) (holding that remarks made by defense counsel to the jury during closing argument in a personal injury action regarding the “insurance crisis” warrant the granting of a néw trial). Third, during closing argument, Dr. Brown’s counsel showed opposing counsel one photograph, to which counsel had no objection, and then surreptitiously showed a different photograph to the jury.
 
 [22]
 
 Fourth, Dr. Brown’s counsel conducted a water balloon demonstration during opening argument and referred to it in closing argument when no foundation had been laid for the demonstration.
 
 [23]
 

 NRCP 59(a)(2) provides that a new trial may be granted due to
 
 *1515
 
 misconduct of the prevailing party. A new trial based upon the prevailing party’s misconduct does not require proof that the result would have been different in the first trial without such misconduct. The United States Supreme Court has held that the litigant whose counsel has engaged in misconduct is not entitled to “the benefit of calculation, which can be little better than speculation, as to the extent of the wrong inflicted upon his opponent.” Minneapolis, St. Paul & Sault Ste. Marie Ry. Co. v. Moquin, 283 U.S. 520, 521-22 (1931). Nevertheless, “[t]o warrant reversal on grounds of attorney misconduct, the ‘flavor of misconduct must sufficiently permeate an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its verdict.’ ” Kehr v. Smith Barney, Harris Upham & Co., Inc., 736 F.2d 1283, 1286 (9th Cir. 1984) (quoting Standard Oil of California v. Perkins, 347 F.2d 379, 388 (9th Cir. 1965)). We hold that the cumulative effect of the aforementioned incidents of misconduct permeated the entire proceeding such that the jury was improperly influenced in reaching its verdict. Time and time again respondents’ lawyers pushed the limits of propriety.
 

 Accordingly, we reverse the district court’s judgment and award of attorney fees.
 

 [1]
 

 NRS 41A.049(2) states in pertinent part: “The screening panel shall consider all the documentary material, including the complaint, answer and response, health care records and records of a hospital or office and the testimony of any expert witnesses the panel considers necessary. ...” NRS 41A.016(2) states:
 

 The written findings of the screening panel are admissible in any action concerning the complaint which is subsequently filed in district court. No other evidence concerning the screening panel or its deliberations is admissible and no member of the screening panel may be called to testify in any such action.
 

 [2]
 

 The right to a jury trial under the Nevada Constitution is coextensive with that guaranteed by the U.S. Constitution. Blanton v. North Las Vegas Mun. Ct., 103 Nev. 623, 628-29, 748 P.2d 494, 497 (1987),
 
 aff’d,
 
 Blanton v. City of North Las Vegas, Nev., 489 U.S. 538 (1989). The constitutional right to a jury trial in Nevada confirms and secures the right as it existed at common law.
 
 Id.
 
 at 628, 748 P.2d at 497.
 

 [3]
 

 See In re Peterson, 253 U.S. 300, 310 (1920) (the Constitution mandates “merely that enjoyment of the right of trial by jury be not obstructed, and that the ultimate determination of issues of fact by the jury be not interfered with”).
 

 [4]
 

 NRS 41A.069 provides:
 

 In any action for medical malpractice tried before a jury, the following instructions must be given:
 

 1. If testimony of a medical expert was given at the review by the screening panel:
 

 During the course of this trial certain evidence was admitted concerning the findings of a screening panel. The findings of the panel were based upon a review of medical records and the testimony of a medical expert based upon his review of those records.
 
 These findings are to be given the same weight as any other evidence,' but are not conclusive on your determination of the case.
 

 2. If testimony of a medical expert was not given at the review by the screening panel:
 

 During the course of this trial certain evidence was admitted concerning the findings of a screening panel. The findings of the panel were based solely upon a review of the medical records.
 
 These findings are to be given the same weight as any other evidence, but are not conclusive on your determination of the case.
 

 (Emphasis added.)
 

 [5]
 

 In the instant case, the jury was not only given the standard statutory instruction that the panel findings “are to be given the same weight as any other evidence [and] are not conclusive on your determination,” but was also instructed that the screening panel “is a summary process to screen those frivolous and marginal cases. It is not a full trial and is not to be considered by you as a substitute for a full trial.” In response to defense arguments highlighting the panel findings, Barrett’s counsel stressed the limitations of the panel procedure during argument:
 

 There’s no live testimony before that screening panel. There’s an affidavit submitted and medical records. There’s no cross-examination, which as we have seen in this trial, is the foundation for truth. Since the Medical/Legal Screening Panel made its decision we have taken 50 depositions. . . . [T]he depositions you saw stacked up here for the last three weeks, all that information was acquired subsequent to the panel’s finding. . . .
 

 [6]
 

 In her reply brief, Barrett implies that it is improper for an expert, the panel in this case, to make a determination on the ultimate issue — negligence. This implication is groundless. In Nevada, as in most jurisdictions, experts may give opinions as to ultimate issues. NRS 41 A. 100, 50.295.
 

 [7]
 

 During oral argument, Barrett’s counsel indicated that the decision of the first screening panel was based on evidence that the defendants in the first panel blamed Mr. Barrett’s complications and death on the malpractice of the defendants in the second panel, and that the decision of the second panel was based on evidence that the defendants in the second panel likewise blamed the defendants in the first panel for malpractice. This information is not in the record on appeal, but if this were the case, fairness to the plaintiff would require that the jury be given this information. If all the defendants concede that malpractice occurred, but that it was committed by someone else, the jury would be entitled to receive this information.
 

 [8]
 

 NRS 41A.056(2) provides in pertinent part: “If the determination is not in favor of the claimant, the claimant may file an action in court.”
 

 [9]
 

 See
 
 Seoane v. Ortho Pharmaceuticals, Inc., 660 F.2d 146, 149 (5th Cir. 1981); Woods v. Holy Cross Hospital, 591 F.2d 1164, 1179-80 (5th Cir. 1979); Hines v. Elkhart General Hospital, 465 F. Supp. 421, 426-27 (N.D. Ind.),
 
 aff’d
 
 603 F.2d 646 (7th Cir. 1979); Keyes v. Humana Hosp. Alaska, Inc., 750 P.2d 343, 347 (Alaska 1988); McCarthy v. Mensch, 412 So. 2d 343, 346 (Fla.),
 
 cert. denied,
 
 459 U.S. 833 (1982); Johnson v. St. Vincent Hospital, Inc., 404 N.E.2d 585, 593 (Ind. 1980); Everett v. Goldman, 359 So. 2d 1256, 1269 (La. 1978); Linder v. Smith, 629 P.2d 1187, 1190 (Mont. 1981); Prendergast v. Nelson, 256 N.W.2d 657, 665-66 (Neb. 1977); Suchit v. Baxt, 423 A.2d 670, 674 (N.J. Super. Ct. Law Div. 1980); Treyball v. Clark, 483 N.E.2d 1136, 1137 (N.Y. 1985); Halpern v. Gozan, 381 N.Y.S.2d 744, 748 (Sup. Ct. 1976); Beatty v. Akron City Hospital, 424 N.E.2d 586, 589-91 (Ohio 1981); State
 
 ex rel.
 
 Strykowski v. Wilkie, 261 N.W.2d 434, 452 (Wis. 1978).
 

 Under analogous circumstances, the U.S. Supreme Court has held that a provision permitting the introduction of the prior findings and order of the Interstate Commerce Commission in a civil action by a shipper against a carrier does not violate the right to jury trial. The Court stated:
 

 This provision only establishes a rebuttable presumption. It cuts off no defense, interposes no obstacle to a full contestation of all the issues, and takes no question of fact from either court or jury. At most therefore it is merely a rule of evidence. It does not abridge the right of trial by jury or take away any of its incidents.
 

 Meeker v. Lehigh Valley R.R. Co., 236 U.S. 412, 430 (1915).
 

 [10]
 

 NRS 41A.056(2) provides:
 

 If the determination is not in favor of the claimant, the claimant may file an action in court. If the claimant does not obtain a judgment in his favor in court, the defendant must be awarded reasonable costs and attorney’s fees incurred after the date of filing the action in court.
 

 [11]
 

 This argument can be characterized as a substantive due process argument as well as a right to a jury trial argument.
 

 [12]
 

 There is a question whether the $876,604.72 attorney fees judgment in this case constitutes “reasonable” attorney fees as required by NRS 41A.056(2). However, in view of our disposition of this case, we need not consider this issue.
 

 [13]
 

 The
 
 Rowe
 
 court pointed to a number of rational bases the Florida legislature might have had for enacting its medical malpractice attorney fees statute:
 

 [T]he award of [attorney fees] is intended not only to discourage meritless claims, but also to make the prevailing plaintiff or defendant whole. It can be argued that, rather than deterring plaintiffs from litigating, the statute could actually encourage plaintiffs to proceed with well-founded malpractice claims that would otherwise be ignored because they are not economically feasible under the contingent fee system. The statute may encourage an initiating party to consider carefully the likelihood of success before bringing an action, and similarly encourage a defendant to evaluate the same factor in determining how to proceed once an action is filed. We reject the argument that [the statute] so deters the pursuit of medical malpractice claims that it effectively denies access to the courts to either party in malpractice actions.
 

 472 So. 2d at 1149.
 

 [14]
 

 Unlike the cases Barrett’s amici cite in their brief, the screening panel attorney fees provision presents no obstacle to commence a lawsuit or obtain a
 
 de novo
 
 trial.
 

 [15]
 

 At least four members of the panel must agree on the “no reasonable probability” finding. NRS 41A.049(6). If four members do not so agree, “the screening panel shall be deemed unable to reach a decision on the issue and shall make a finding to that effect.”
 
 Id.
 
 Under such circumstances, the claimant may file a civil action, but is not subject to an award of attorney fees if he or she loses at trial. NRS 41A.056(3), 41A.049(5)(c).
 

 [16]
 

 Barrett’s amici also make various empirical claims to bolster their arguments. In assessing the constitutionality of NRS 41A.056, this court is bound to evaluate the provision as enacted and cannot consider its effectiveness in achieving its goals.
 
 See
 
 Allen v. State Pub. Emp. Ret. Bd., 100 Nev.
 
 *1509
 
 130, 676 P.2d 792 (1984). Thus, evidence concerning the impact of the attorney fees provision is immaterial to the constitutional analysis and we do not address amici’s empirical claims nor respondents’ attempts to refute those claims.
 

 [17]
 

 The voluminous legislative history of the statute accompanied the “Brief of Attorney General on Issue of the Unconstitutionality of the Nevada Medical Legal Screening Panel Statute.” Pursuant to stipulation of all parties, the Attorney General was permitted to intervene for a limited purpose after Barrett raised the constitutionality issue in her motion for a new trial.
 

 [18]
 

 Courts of other states have held that malpractice screening panel legislation may cover fewer than all health care providers without offending equal protection.
 
 See, e.g.,
 
 Borja v. Phoenix General Hosp., Inc., 727 P.2d 355, 358 (Ariz. Ct. App. 1986); State
 
 ex rel.
 
 Schneider v. Liggett, 576 P.2d 221, 229 (Kan.),
 
 appeal dismissed,
 
 Liggett v. Kansas,
 
 ex
 
 rel.Schneider, 439 U.S. 808 (1978); Everett v. Goldman, 359 So.2d 1256, 1265 (La. 1978); Prendergast v. Nelson, 256 N.W.2d 657, 667 (Neb. 1977); State
 
 ex rel.
 
 Strykowski v. Wilkie, 261 N.W.2d 434, 444 (Wis. 1978).
 

 [19]
 

 Article 3, Section 1 of the Nevada Constitution states:
 

 The powers of the Government of the State of Nevada shall be divided into three separate departments, — the Legislative, — the Executive and the Judicial; and no persons charged with the exercise of powers properly belonging to one of these departments shall exercise any functions, appertaining to either of the others, except in the cases herein expressly directed or permitted.
 

 [20]
 

 Barrett’s amici maintain that NRS 41 A.056(2) violates medical malpractice claimants’ due process rights because (1) there is no opportunity to challenge the panel’s “no reasonable probability” finding, and (2) the trial judge has no discretion to deny an award of fees. Amici’s claims are meritless.
 

 Amici suggest that a claimant must be provided with an opportunity to appeal the panel’s negative finding because that finding may ultimately provide the basis for an award of attorney fees and costs under NRS 41 A. 056(2). However, where a full and fair hearing is provided, due process
 

 
 *1513
 
 does not require that appellate review be provided. Jackson Water Works, Inc. v. Public Utilities Comm’n of State of Cal., 793 F.2d 1090, 1097 (9th Cir. 1986),
 
 cert. denied,
 
 479 U.S. 1102 (1987). While the screening panel statute does not provide a direct appeal from the panel determination, it provides something better — a
 
 de novo
 
 trial.
 

 More fundamentally, amici’s due process claim ignores the fact that it is not the panel finding, but the final jury verdict, that triggers the fee award. Had the legislature chosen to do so, it could have skipped the panel finding entirely and simply provided for an award of fees to the prevailing party in all medical malpractice actions. Florida’s statute did just this; it provided that a trial court must award a “reasonable attorney’s fee” to the prevailing party in a medical malpractice action. Florida Patient’s Compensation Fund v. Rowe, 472 So. 2d 1145, 1146 (Fla. 1985). As noted already, this statute passed constitutional muster.
 
 Id.
 
 at 1149.
 

 Amici also argue that the screening panel statute’s attorney fees provision violates due process because the trial court has no discretion to deny an award of fees where such an award would be unjust. The case amici cite in support of this claim involved a statute containing a specific “substantial injustice” provision. Arbuckle v. Com., Unemployment Compensation Bd. of Review, 478 A.2d 545 (Pa. 1984). NRS 41A.056, like many other fee-shifting provisions, only requires an award of fees that the court determines reasonable. Generally, the court will set an award only after the parties have had a full opportunity to debate the merits and amount of the award. This is precisely what occurred here. Thus, we conclude that the attorney fees provision is in complete compliance with the requirements of due process.
 

 [21]
 

 The screening panel statute even provides for several peremptory challenges of potential panel members and an unlimited number of challenges for cause. NRS 41 A.043.
 

 [22]
 

 While we believe Dr. Brown’s counsel’s characterization that he wanted to illustrate to the jury “that words can be a matter of interpretation,” what disturbs this court is that the switching of photographs was done in a conniving manner.
 

 [23]
 

 Evidence of a test or a demonstration is not admissible unless the proponent makes a foundational showing of substantial similarity between the demonstration conducted and the actual conditions that existed at the time of the injury. Way v. Hayes, 89 Nev. 375, 377, 513 P.2d 1222, 1223 (1973). Counsel did not satisfy these requirements.