Rose, C. J.,
with whom Shearing and Leavitt, JL, agree, dissenting:
This is a case about the road rage conduct of Kenneth DeJesus that caused a substantial permanent brain injury to Sherry Flick. The majority concludes that the jury’s award be reversed because Sherry’s attorney made improper statements, despite the fact these statements were not objected to. I disagree. I believe that some of the statements that were not objected to were not improper. I further believe that those statements that were improper did not so pervade the trial with prejudice as to require the reversal of this case. I would therefore affirm the judgment entered below, except for the award for future medical expenses, which I would reduce to an amount supported by the evidence.
Sherry sustained serious injuries while riding as a passenger in a vehicle driven by her sister on the freeway. Because DeJesus believed that Sherry’s sister had cut him off in traffic, DeJesus began tailgating the Flick vehicle. DeJesus then pulled ahead and cut the Flick vehicle off, forcing it into the dirt and bushes in the median. The force of the impact with the median broke the axle of the Flick vehicle, disabling the car. Upon leaving his vehicle, DeJesus leaned over the front hood of the Flick car, pounded his fists on the front windshield, and demanded that Sherry and her sister exit their car. Sherry and her sister were paralyzed with fear, and Sherry testified that DeJesus made a throat-slashing gesture signaling “that he was going to cut my throat or kill me or Julie or the people who were there.”
DeJesus then left the scene of the accident, but later returned. Upon his return to the scene, DeJesus was cited for misdemeanor assault for cutting off the Flick vehicle, and pleaded guilty to this charge. Thereafter, Flick filed a negligence action against DeJesus.
Prior to trial, Dejesus’s attorneys admitted liability, and then attempted to suppress the inflammatory facts concerning Dejesus’s conduct. The district court denied this attempt to conceal Dejesus’s inflammatory acts, and even the majority agrees that these facts were admissible and relevant to Sherry’s physical and emotional injuries caused by DeJesus.
*824 Because of the inflammatory nature of Dejesus’s conduct, I believe that it is more likely that the jury was inflamed by his road rage, rather than Sherry’s attorney’s statements. Indeed, Dejesus’s conduct was so egregious that going into this trial, anyone could have predicted that the jury would give top dollar for any injuries it believed Sherry sustained.
We will affirm a jury verdict that is alleged to be excessive provided it is supported by substantial evidence. See Yamaha Motor Co. v. Arnoult, 114 Nev. 233, 955 P.2d 661 (1998). There was substantial, although contradicting, evidence presented to support the jury’s award of damages. Although Dejesus’s experts opined that Sherry did not have any serious injuries, Sherry’s neurologist and medical expert testified that she had sustained a moderate brain injury from the accident and would have periodic spells of dizziness and blackouts for the rest of her life. Sherry’s neurologist further testified that Sherry had permanently damaged the nerves in her hands, resulting in numbness and the clawing of her fingers.
Shortly after the accident, Sherry testified that she would fall when she blacked out, resulting one time in black eyes and another time in burns from hot asphalt on her hands, knees, and legs. Sherry further testified that she was afraid to become a mother because she might black out and injure her baby, and that she was afraid she would lose her driver’s license and eventually be unable to drive because of her blackouts. While damages were high in this matter, they nonetheless are supported by substantial evidence provided the jury believed the physicians who testified in Sherry’s favor. Again, when considering that Sherry’s injuries were essentially the product of road rage, a recent phenomenon that has many drivers fearing for their safety on the streets, the high verdict in this case should have surprised no one.[1]
In reviewing whether an attorney’s improper statements affect the verdict, this court considers whether Sherry’s attorney’s statements were so prejudicial and egregious that they infected the entire trial so that the judgment could only be the result of that *825 misconduct. See Barrett v. Baird, 111 Nev. 1496, 908 P.2d 689 (1995). I conclude that the proceeding below was not so prejudicial and egregious as to warrant reversal, and the high verdict was in all probability the result of Dejesus’s road rage conduct.
Preliminarily I note that several statements made in closing argument and characterized as improper do not seem improper to me. Sherry’s attorney argued that in considering future damages, the men on the jury should consider the problems and emotional trauma Sherry would experience if she became pregnant. While perhaps inartfully phrased, any concern that Sherry’s attorney was asking the male jurors to put themselves in Sherry’s place could have been cured by an objection that would have simply resulted in Sherry’s attorney rephrasing his argument. Further, Sherry’s attorney’s statement that the jury should tap into Sherry’s feelings of fear likewise is not improper because it was a mere reference to the evidence presented, namely Sherry’s testimony concerning her fear, and not a request for the jurors to place themselves in Sherry’s place.
At another point in closing argument, Sherry’s attorney commented that the jury had the right to reject Oliveri’s medical testimony because his testimony was bought and paid for. I believe that this was a permissible argument in light of both Oliveri’s large fee and the starkly contradicting medical testimony presented by the parties. First, during cross-examination of Dr. Oliveri, Sherry’s attorney elicited the fact that he was charging a total of $5000.00 for his testimony. Second, Dr. Oliveri’s statement that Sherry was able to stand with her eyes closed without losing her balance was directly contradicted by Sherry’s father, who testified that Sherry fell backwards when performing this test in Dr. Oliveri’s presence. Third, Dr. Oliveri testified that Sherry’s symptoms were inconsistent with a brain injury, while Sherry’s doctors testified to the contrary. It can be inferred from the aforementioned evidence in the record that Dr. Oliveri’s testimony was misleading and paid for by excessive fees. I see nothing wrong with a party arguing that the medical testimony produced by the opposing party was the result of something other than objective assessment where that party has produced contradicting evidence.
I do agree with the majority, however, that the continuing argument by Sherry’s attorney that this is how the system works, how civil defense attorneys secure the desired testimony, and that the verdict should punish all civil defense attorneys was improper in a negligence action where punitive damages are disallowed. However, Sherry’s attorney did not object to these arguments. Moreover, the record reveals that both plaintiff’s and defendant’s attorneys permitted a lot of testimony and argument into evidence *826 without objection, creating a freewheeling atmosphere that the district court permitted.
In civil cases, we place great reliance on the advocacy system and require the attorneys for the parties to present their case competently and to timely state all objections. If evidence or argument is not objected to, it cannot be later claimed as grounds for reversal unless it can be determined that plain error occurred that prejudiced and inflamed the jury.
Other courts have faced factual situations very similar to the one presented here, and these courts have developed a rule that would better compliment our holding in Barrett v. Baird, 111 Nev. 1496, 908 P.2d 689 (1995). See Horn v. Atchison, Topeka and Santa Fe Ry. Co., 394 P.2d 561, 565 (Cal. 1964); Neumann v. Bishop, 130 Cal. Rptr. 786, 811-12 (Ct. App. 1976); Budget Rent A Car Sys., Inc. v. Jana, 600 So. 2d 466, 467-68 (Fla. Dist. Ct. App. 1992).
In Horn, the California Supreme Court concluded that the remarks of plaintiff’s counsel had created an atmosphere of bias and prejudice that was manifestly calculated to deprive the defendant of a new trial. 394 P.2d at 565. Despite this conclusion, the court affirmed the jury’s verdict for plaintiff and held that the defendant had waived his right to complain by failing to object:
Generally, a claim of misconduct is entitled to no consideration on appeal unless the record shows a timely and proper objection and a request that the jury be admonished. The purpose of the rule requiring the making of timely objections is remedial in nature, and seeks to give the court the opportunity to admonish the jury, instruct counsel and forestall the accumulation of prejudice by repeated improprieties, thus avoiding the necessity of a retrial. “It is only in extreme cases that the court, when acting promptly and speaking clearly and directly on the subject, cannot, by instructing the jury to disregard such matters, correct the impropriety of the act of counsel and remove any effect his conduct or remarks would otherwise have.” In the absence of a timely objection the offended party is deemed to have waived the claim of error through his participation in the atmosphere which produced the claim of prejudice.
Horn, 394 P.2d at 565-66 (emphasis added) (citations omitted) (quoting Tingley v. Times-Mirror Co., 89 P. 1097, 1106 (Cal. 1907)).
Numerous other California courts have followed the holding in Horn and affirmed verdicts where there was improper trial conduct to which the opposing attorney failed to object. For example, *827 in Sabella v. Southern Pacific Co., 449 P.2d 750, 754 (Cal. 1969), the court affirmed a verdict for plaintiff despite the fact that plaintiff’s counsel had accused the defense witnesses of committing perjury, appealed to the jurors’ sympathies through repeated references to both the defendant’s wealth and plaintiff’s lack of resources, and made an improper golden rule argument.
Similarly, in Neumann, 130 Cal. Rptr. at 811-12, the court concluded that plaintiff’s counsel had made numerous improper arguments, including several improper golden rule arguments, an argument that pain and suffering should be four times the special damages, and an erroneous argument that the defendant had a right to indemnity. Despite this impropriety, the court affirmed the jury verdict and held that the defense counsel had waived its claim of error by failing to object or by making an inadequate objection. See Neumann, 130 Cal. Rptr. at 812. The court further concluded that the jury’s award was not so “grossly excessive as to shock the moral sense so that the trial court as well as the jury can be deemed to have succumbed to passion or prejudice.” Id. at 814.
The Florida courts, like California, have also recognized that the failure to object to an attorney’s improper argument in a civil case generally constitutes a waiver of the right to appeal this issue. In Budget Rent A Car Systems, Inc. v. Jana, 600 So. 2d 466, 467-68 (Fla. Dist. Ct. App. 1992), the court held that although the plaintiff’s attorney clearly made arguments “in violation of the well known golden rule,” review of this issue was precluded, as the defense counsel did not object and the arguments made were not “sinister”:
This court has held that, absent contemporaneous objection, an improper comment made during closing remarks will not support reversal. In [one Florida appellate case] this court held that failure to object below to improper comments made in closing remarks constitutes a waiver of any right to complain on appeal. It is only in those rare circumstances where the comments are “of such sinister influence as to constitute irreparable and fundamental error” that the absence of objection will be overlooked.
Id. at 467-68 (emphasis added) (citations omitted) (quoting LeRetilley v. Harris, 354 So. 2d 1213 (Fla. Dist. Ct. App. 1978)).
As in California and Florida, our review should narrow where there is no objection in order to discourage the needless waste of judicial resources required for a new trial. See generally McGuire v. State, 100 Nev. 153, 158-59, 677 P.2d 1060, 1065 (1984) (discussing the costs associated with attorney misconduct). Indeed, *828 the failure to object frustrates the district court’s ability to admonish the jury and instruct counsel so that it may forestall the accumulation of prejudice, thereby avoiding the necessity of a new trial. See Horn, 394 P.2d at 565.
I am concerned that this case will increase appellate litigation. In the future, this court will be required to review many more civil cases where improper argument is claimed but no objection was made at trial. Adopting the rule espoused in Horn, Neumann, and Budget Rent A Car would prevent this situation from occurring.
Sherry sustained permanent brain damage from the road rage conduct of DeJesus. Substantial evidence supported the admittedly high jury award. I am convinced, however, that if the jury was in any way inflamed, such passion was caused by the conduct of DeJesus and not by a few improper statements made by Sherry’s attorney. I would affirm the verdict with the exception that I would reduce future medical expenses to the evidence presented. Accordingly, I dissent to the majority opinion.

DeJesus cites an offer of judgment made by Sherry to settle for $100,000.00. Offers of judgment are made for several reasons and often have no relation to the value of the offering party’s case. Specifically, offers are often made for a defendant’s insurance policy limits, but the insurance company is unwilling to pay the policy limits to an injured plaintiff. By refusing to pay the policy limits, the risk of an excess verdict is transferred to the insurance company. See, Green v. J.C. Penney Auto Ins. Co., 806 F.2d 759, 763-64 (7th Cir. 1986); 46A C.J.S. Insurance § 1584 (1993). While settlement negotiations are usually not part of the record on appeal, I would suspect that Sherry’s offer to settle for $100,000.00 was a demand for the policy limits and made to obtain a strategical advantage once the insurance company refused to pay, and not made because Sherry thought $100,000.00 was the value of her case.