OPINION
By the Court, Maupin, J.:
This original petition for a writ of mandamus challenges district court orders dismissing petitioner’s medical malpractice action and denying his motion to amend his malpractice complaint. Because the petition involves important issues of law concerning the expert witness certification requirements of recently enacted NRS 41A.071, issues that merit clarification to further judicial economy in this case and in general, we grant this petition for writ relief.[1]

FACTS AND PROCEDURAL HISTORY

In January 1998, petitioner Alan Borger consulted with real party in interest James Lovett, M.D., a general surgeon, for treatment of recurrent lower digestive tract difficulties. Eventually, in early 1999, Dr. Lovett secured a clinical consultation from real party in interest, Dipak Desai, M.D., a gastroenterologist. Dr. Desai diagnostically confirmed that Borger suffered from a condi *1023 tion known as Crohn’s disease[2] and agreed with Dr. Lovett’s recommendations for surgical intervention. On March 26, 1999, in accordance with the joint assessment, Dr. Lovett performed a colectomy[3] and ileostomy[4] upon Borger.
Unfortunately, Borger’s condition did not improve over time. In January 2002, Borger began treatment with a second gastroenterol-ogist, Marc Kudisch, M.D. Dr. Kudisch ultimately concluded that Dr. Desai misdiagnosed Borger with Crohn’s disease, and that Dr. Lovett recommended and performed an unnecessary and overly aggressive surgical procedure. On June 24, 2002, Borger filed a complaint for medical malpractice against Drs. Lovett and Desai with the Nevada medical-legal screening panel.[5]
When Borger initiated the panel proceedings, all medical malpractice actions were subject to statutory prescreening by medical-legal screening panels.[6] This statutory mechanism prohibited the filing of malpractice actions in district court without prior resort to the prescreening procedures.[7] Complaints for panel review were lodged with the Division of Insurance of the Nevada Department of Business and Industry[8] and, under certain circumstances, were subject to dismissal or rejection by the panel if filed without an affidavit from a medical expert in support of the malpractice claim.[9] Findings of the panel in favor of or against the medical provider were admissible in any ultimate trial proceedings in district court.[10]
During the summer of 2002, while Borger’s claim remained pending before the screening panel, the Governor of Nevada called the Legislature into special session to address a perceived medical malpractice insurance crisis. The Legislature, among other things, enacted various measures limiting or “capping” noneconomic damages in medical malpractice cases,[11] tied damage limitations to procurement by medical providers of minimum professional liabil *1024 ity coverage,[12] changed the rales concerning joint and several liability of multiple malpractice defendants,[13] repealed provisions requiring prescreening of cases by medical-legal screening panels,[14] and provided for mandatory settlement conferences.[15] NRS 41A.071, enacted as part of the special legislative package, requires that medical malpractice complaints filed on or after October 1, 2002,[16] be accompanied by affidavits of merit from medical experts.[17] Under this provision, the affiant must practice or have practiced in an area that is “substantially similar to the type of practice engaged in at the time of [the defendant’s] alleged malpractice.”[18] A district court must dismiss, “without prejudice,” any malpractice complaint filed in violation of NRS 41A.071.
Under the special session legislation, malpractice plaintiffs could elect to proceed under the repealed statutory format in actions filed with the Division of Insurance or in district court before October 1, 2002. Because Borger claimed considerable noneconomic damages, he elected to proceed under the old system, under which damage awards were not subject to monetary limitations.
On December 19, 2002, before the conclusion of the screening panel proceedings, Borger filed his first formal complaint in district court for medical malpractice against the real parties in interest: Dr. Lovett, Lewis & Lovett, Ltd., d/b/a Desert West Surgery, Dr. Desai and his corporate affiliate, Endoscopy Center of Southern Nevada, L.L.C., d/b/a Gastroenterology Center of Nevada. Pertinent to these proceedings, the complaint alleged (1) that Dr. Lovett and Dr. Desai misdiagnosed Borger’s condition, (2) that Dr. Lovett’s conduct fell below the standard of care by performing the wrong surgical procedure, and (3) that the surgical result obtained was deficient. No affidavit of merit accompanied the initial complaint. On March 7, 2003, Borger filed an amended complaint in the matter, which incorporated an affidavit of Dr. Kudisch supporting the allegations against both physicians. At that point, the parties stipulated to stay the district court proceedings until the medical-legal screening panel concluded its prescreening functions.[19]
*1025 After the panel made findings in favor of the defense, Dr. Lovett and Lewis & Lovett, Ltd., d/b/a Desert West Surgery, moved to dismiss Borger’s complaint for failure to submit an affidavit of merit by an expert in Dr. Lovett’s area of practice — general surgery. Although conceding that Dr. Kudisch’s affidavit supported claims against Dr. Desai, both being gastroenterologists, Dr. Lovett argued that Borger’s failure to supply an affidavit from a general surgeon mandated dismissal of the action against him.
Borger argued in response that Dr. Kudisch practiced within a discipline substantially similar to that practiced by Dr. Lovett in his assessment, diagnosis and treatment of Borger. Alternatively, Borger sought leave to amend his complaint to comply with NRS 41A.071. In this, Borger attached the affidavit of a general surgeon to his proposed amended complaint.
The district court dismissed the case against Dr. Lovett and his professional corporation and denied Borger’s motion to amend, as follows:
The expert in this case Dr. Kudisch is a gastroenterologist. Gastroenterology is not an area that is substantially similar to the type of practice engaged in by [Dr. Lovett] at the time of the alleged malpractice, and therefore the affidavit is insufficient to satisfy the statutory requirement. ... [As to the motion to amend] . . . [t]he remedy for failure to attach an appropriate supporting affidavit is dismissal without prejudice.
Borger’s mandamus petition requests relief from this order.

DISCUSSION

“A writ of mandamus is available to compel the performance of an act which the law requires as a duty resulting from an office, trust, or station, or to control an arbitrary or capricious exercise of discretion.’ ’[20] A writ of mandamus is not available where the petitioner has a plain, speedy, and adequate remedy at law.[21] “Mandamus is an extraordinary remedy, and the decision as to whether a petition will be entertained lies within the sound discretion of this court.”[22] Because this petition raises important legal issues that are likely to be the subject of extensive litigation in the near term within the Nevada district court system, because inconsistent rulings at that level may likely result, and because avoidance *1026 of multiple actions in connection with Borger’s claims will conserve judicial resources here and in the district court, we elect to resolve this petition on its merits.[23]

Affidavit requirements under NRS 41A.071

Although Borger filed his action with the Division of Insurance in June 2002, before the effective date of the newly created legislative scheme, elected to proceed under the repealed system, and supported his case with expert opinions before the screening panel, the parties agree that the affidavit requirements of NRS 41A.071 apply to these proceedings. Borger, however, contends that the district court incorrectly interpreted the language of this statute. We review a district court’s conclusions of law, including statutory interpretations, de novo.[24]
As noted, the special legislative package repealed the former statutory construct under which a panel of doctors and lawyers pre-screened medical malpractice complaints. Accordingly, the expert affidavit requirements of NRS 41A.071 are designed to account for the abolition of the screening panels and to ensure that parties file malpractice cases in good faith, i. e., to prevent the filing of frivolous lawsuits.[25] In its entirety, NRS 41A.071 provides:
*1027 If an action for medical malpractice ... is filed in the district court, the district court shall dismiss the action, without prejudice, if the action is filed without an affidavit, supporting the allegations contained in the action, submitted by a medical expert who practices or has practiced in an area that is substantially similar to the type of practice engaged in at the time of the alleged malpractice.
Dr. Lovett takes a literal approach to this provision, contending that an affiant supporting allegations against a malpractice defendant must certify that he or she specifically engages in the same type of practice area as the defendant. That is, a complaint against a general surgeon must be supported by an affidavit from a general surgeon. Accordingly, Dr. Lovett reasons that, regardless of the discipline of medicine implicated by the patient’s need for surgical intervention, a solely clinical subspecialist in the field of medicine involved may not support a complaint by the patient against a surgeon. This approach was seemingly taken by the district court below. Thus, despite the fact that Dr. Lovett’s diagnosis and treatment clearly involved issues related to the practice of gastroenterol-ogy, the district court ruled that NRS 41A.071 prohibits a clinical expert in that field of medicine from addressing Dr. Lovett’s diagnosis and treatment of Borger.
The Legislature has not provided an explanation or guidance for courts to resolve disputes over whether an affiant practices in an area that is “substantially similar to the type of practice engaged in at the time of the alleged malpractice.”[26] However, in addressing a similarly worded testimonial requirement, the Connecticut Appellate Court has held that “[t]he threshold question of admissibility is governed by the scope of the witness’ knowledge and not *1028 the artificial classification of the witness by title.”[27] Although the Nevada special session legislation does not allow unrestricted use of medical expert witnesses who testify based upon acquired knowledge outside the witness’ area of present or former practice and prohibits testimony based upon knowledge solely obtained for the purpose of the litigation, the legislation allows medical experts to testify in medical malpractice cases where their present or former practice reasonably relates to that engaged in by the defendant at the time of the alleged professional negligence. Thus, the Connecticut view provides a partial framework for our interpretation of NRS 41A.071.
Applying the Nevada statute to the matter at hand, we conclude that the district court erred in its dismissal of the action below. First, the statute does not require that the affiant practice in the same area of medicine as the defendant; rather, it requires that the affiant practice in an area “substantially similar” to that in which the defendant engaged, giving rise to the malpractice action. Second, the district court erred in its determination that Dr. Kudisch’s area of practice was not substantially similar to that in which Dr. Lovett engaged with respect to this particular patient. The diagnosis and treatment rendered by Dr. Lovett implicates Dr. Kudisch’s area of expertise, the practice of gastroenterology. Thus, the statute was not violated when Dr. Kudisch drew conclusions about perceived deficiencies in Dr. Lovett’s diagnosis, choice of treatment modality and the surgical result obtained. Third, because NRS 41A.071 governs the threshold requirements for initial pleadings in medical malpractice cases, not the ultimate trial of such matters, we must liberally construe this procedural rule of pleading in a manner that is consistent with our NRCP 12 jurisprudence.[28]
In light of the above, the attachment of Dr. Kudisch’s affidavit to Borger’s amended complaint for medical malpractice met the requirements of NRS 41 A.071.

Remedies for noncompliance with NRS 41A.071

Borger alternatively contends that, rather than dismiss the action, the district court should have allowed him the opportunity to *1029 amend his complaint to include an affidavit of a general surgeon. Dr. Lovett responds that the mandatory dismissal feature of NRS 41A.071 forecloses such an option. Although our ruling above obviates any need to reach the question of whether the district court should have granted leave to amend, we will address Borger’s alternative claim. We do so because this issue is likely to arise in a substantial number of cases statewide.[29]
Whether NRS 41A.071 prohibits such amendments raises an interesting issue of separation of powers. Although the Legislature is certainly empowered to define substantive legal remedies, “[t]he judiciary has the inherent power to govern its own procedures.”[30] Going fhrther, “the judiciary, as a coequal branch of government, has inherent powers to administer its affairs, which include rule-making and other incidental powers reasonable and necessary to carry out the duties required for the administration of justice.”[31] Thus, we must resolve the question of whether NRS 41A.071 prohibits amendments, to effect compliance with it, in a manner that does not improperly restrict the discretion of district courts in the procedural management of litigation, which includes conservation of judicial resources.
We note that NRS 41A.071 is silent as to whether a district court may grant leave to amend where compliance with it is lacking. Notwithstanding this omission, we conclude that NRS 41A.071 clearly mandates dismissal, without leave to amend, for complete failure to attach an affidavit to the complaint. This interpretation is consistent with the underlying purpose of the measure, which is to ensure that such actions be brought in good faith based upon competent expert opinion. In this, the statute clearly works against frivolous lawsuits filed with some vague hope that a favorable expert opinion might eventually surface. To this extent, NRS 41A.071 does not unduly impinge upon the inherent power of the judiciary to economically and fairly manage litigation.
Our resolution of the basic affidavit requirement does not end this analysis. A different problem of interpretation will arise in the event of a legitimate dispute over whether a filed affidavit of merit complies with the statute. Because NRS 41 A.071 contains no explicit prohibition against amendments, and because legislative changes in the substantive law may not unduly impinge upon the ability of the judiciary to manage litigation, we conclude that a district court, within its sound discretion and considering the need for *1030 judicial economy, may grant leave to amend malpractice complaints supported by disputed affidavits under circumstances where justice so requires. Retention of this discretion in conjunction with the requirements of NRS 41A.071 is consistent with well-recognized notions of separation of legislative and judicial powers.

CONCLUSION

Because the district court manifestly abused its discretion in granting Dr. Lovett’s motion to dismiss, because our intervention to correct that error will further important considerations of judicial economy to prevent multiple proceedings arising from the same case, and because the issue here is in need of clarification for the bench and bar in general, we grant the petition. Accordingly, we direct the clerk of this court to issue a writ of mandamus instructing the district court to vacate its order of dismissal and reinstate petitioner’s action against real parties in interest James Lovett, M.D., and Lewis & Lovett, Ltd., d/b/a Desert West Surgery.
Rose and Douglas, JJ., concur.

See Falcke v. Douglas County, 116 Nev. 583, 586, 3 P.3d 661, 662-63 (2000); Smith v. District Court, 113 Nev. 1343, 1344, 950 P.2d 280, 281 (1997).

Chronic regional inflammation of the small intestines, including the ileum. Taber’s Cyclopedic Medical Dictionary 433, 890 (Clayton L. Thomas ed., 16th ed. 1989).

Surgical excision of a portion of or the entire colon. Attorney’s Illustrated Medical Dictionary C60 (2002).

Surgical creation of an external opening into the ileum (portion of the small intestine) through the abdominal wall. Id. at 12.

See NRS 41A.016(1) (repealed 2002); NRS 41A.039(1) (repealed 2002).

See NRS 41A.016(1) (repealed 2002).

Id.

See NRS 41A.039(1) (repealed 2002); NRS 41A.005 (repealed 2002).

See NRS 41A.039(2) (repealed 2002); NRS 41A.069 (repealed 2002); NRS 41 A. 100 (repealed 2002).

See NRS 41A.016(2) (repealed 2002).

NRS 41A.031(1).

NRS 41A.031(3), (4).

NRS 41A.041(1).

See, e.g., NRS 41A.016 (repealed 2002).

NRS 41A.081(1).

 2002 Nev. Stat. Spec. Sess., ch. 3, §§ 8, 75, at 8, 27.

 The statute also contemplates that the affidavit be attached to the complaint filed with the district court clerk. There was no such requirement under the former statutes governing medical malpractice cases.

NRS 41A.071.

It is unclear, given his election to proceed under the old system, why Borger proceeded in district court prior to the termination of panel proceedings.

Brewery Arts Ctr. v. State Bd. Examiners, 108 Nev. 1050, 1053, 843 P.2d 369, 372 (1992); see also NRS 34.160.

Widdis v. Dist. Ct., 114 Nev. 1224, 1227, 968 P.2d 1165, 1167 (1998); see also NRS 34.170; NRS 34.330.

Brewery Arts Ctr., 108 Nev. at 1053, 843 P.2d at 372.

Business Computer Rentals v. State Treas., 114 Nev. 63, 67, 953 P.2d 13, 15 (1998) (noting that when “an important issue of law needs clarification and public policy is served by this court’s invocation of its original jurisdiction, [the] consideration of a petition for extraordinary relief may be justified” (citing Ashokan v. State, Dept. of Ins., 109 Nev. 662, 667, 856 P.2d 244, 247 (1993))).
Dr. Lovett contends that this court should deny Borger’s petition because he has another remedy at law — certification of finality and direct appeal under NRCP 54(b). While this remedy was available, NRCP 54(b) certifications are discretionary. In any event, we have determined, for the reasons stated, to reach the merits of this writ petition.
We note in passing Borger’s concern that writ relief is his only adequate remedy because the applicable statute of limitations has now run upon his claims against Dr. Lovett. Whether this is so depends in large part on the extent to which the limitation period was tolled during the pendency of the action before the medical-legal screening panel and later in court. In this connection, the legislative history of the new malpractice legislation is silent on the tolling issue (the special session legislation repealed the tolling provisions concerning pendency of actions before medical-legal screening panels as part of the overall repeal of that process). Because of the result reached in this matter today, we need not reach the tolling question with respect to this matter, or generally, as to actions commenced on or after October 1, 2002. However, it would appear that the Legislature intended that the limitation period governing malpractice actions be tolled during the actual pendency of any such action.

Birth Mother v. Adoptive Parents, 118 Nev. 972, 974, 59 P.3d 1233, 1235 (2002).

Hearing on S.B. 2 Before the Senate Comm, of the Whole, 18th Special Sess. (Nev., July 30, 2002) (statement of Mr. Bill Bradley, Attorney, Nevada *1027 Trial Lawyers Association); cf. NRS 41 A. 100(1) (eliminating the requirement for expert testimony under certain situations implicating the doctrine of res ipsa loquitur). Interestingly, it appears that while a complaint implicating the doctrine of res ipsa loquitur must be supported by an expert affidavit, the plaintiff may present his or her res ipsa case at trial without any expert support. We leave any questions of inconsistencies between NRS 41A.071 and NRS 41 A. 100(1) for future litigation. Also, the parties to this appeal have not raised questions implicating the doctrine of res ipsa loquitur.

NRS 41A.071. Dr. Lovett relies heavily upon case law construing the Michigan malpractice affidavit requirement. That authority is inapposite be-, cause the Michigan statute requires that a malpractice complaint against a board certified specialist be supported by an affidavit of merit from a physician with the same board certification as the defendant. See Mich. Comp. Laws §§ 600.2912d(1), 600.2169(1)(a) (2000); Wang v. Sporleder, No. 244611, 2004 WL 316410, at *1 (Mich. Ct. App. Feb. 19, 2004) (unpublished opinion); Alliet v. Berenholz, No. 242469, 2004 WL 258201, at *1 (Mich. Ct. App. Feb. 12, 2004) (unpublished opinion) (“If the defendant is board certified in a specialty, the expert witness must be board certified in the same specialty.”). This requirement is much more restrictive and specific than that contained in NRS 41A.071.

Marshall v. Yale Podiatry Group, 496 A.2d 529, 531 (Conn. App. Ct. 1985).

See Capital Mortgage Holding v. Hahn, 101 Nev. 314, 315, 705 P.2d 126, 126 (1985) (“On a motion to dismiss for failure to state a claim for relief, the trial court and this court must construe the pleadings liberally and draw every fair intendment in favor of the plaintiff.”). We note, however, that the qualifications generally required of trial experts under NRS 41 A. 100(2) are identical to those required of medical expert affiants under NRS 41A.071. In this, we cannot conclude that the expert witness qualification requirement of NRS 41A. 100(2) compels a different level of scrutiny than that applied today to NRS 41A.071.

See supra note 23.

State v. Connery, 99 Nev. 342, 345, 661 P.2d 1298, 1300 (1983).

Goldberg v. District Court, 93 Nev. 614, 615-16, 572 P.2d 521, 522 (1977) (citations omitted).