**130 Nev., Advance Opinion 74**

# IN THE SUPREME COURT OF THE STATE OF NEVADA

MAX ZOHAR, A MINOR; AND DAFNA NOURY, INDIVIDUALLY AND AS THE NATURAL MOTHER OF MAX ZOHAR,
Appellants,
vs.
MICHAEL ZBIEGIEN, M.D., AN INDIVIDUAL; EMCARE, INC., A FOREIGN CORPORATION; EMCARE PHYSICIAN SERVICES, INC, A FOREIGN CORPORATION; EMCARE PHYSICIAN PROVIDERS, INC., A FOREIGN CORPORATION; AND RACHEL LOVERA, R.N., AN INDIVIDUAL,
Respondents.

No. 60050

**FILED**

SEP 1 8 2014


TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order, certified as final under NRCP 54(b), dismissing respondents from a medical malpractice action. Eighth Judicial District Court, Clark County; Michael Villani, Judge.

*Reversed and remanded.*

Eglet Wall Christiansen and Artemus W. Ham and Erica D. Entsminger, Las Vegas,
for Appellants.

Alverson, Taylor, Mortensen & Sanders and David J. Mortensen and Ian M. Houston, Las Vegas,
for Respondents Michael Zbiegien, M.D.; EmCare, Inc.; EmCare Physician Services, Inc.; and EmCare Physician Providers, Inc.

Hall Prangle & Schoonveld, LLC, and Michael E. Prangle and Casey W. Tyler, Las Vegas,
for Respondent Rachel Lovera, R.N.

14-30950

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, GIBBONS, C.J.:

In this opinion, we consider whether an expert affidavit attached to a medical malpractice complaint, which otherwise properly supports the allegations of medical malpractice contained in the complaint but does not identify all the defendants by name and refers to them only as staff of the medical facility, complies with the requirements of NRS 41A.071. We conclude that in order to achieve NRS 41A.071's purpose of deterring frivolous claims and providing defendants with notice of the claims against them, while also complying with the notice-pleading standards for complaints, the district court should read a medical malpractice complaint and affidavit of merit together when determining whether the affidavit meets the requirements of NRS 41A.071. In this case, the expert affidavit, while omitting several names, adequately supported the allegations of medical malpractice against respondents contained in the complaint and provided adequate notice to respondents of the claims against them. We therefore reverse the district court's order of dismissal and remand this case to the district court for further proceedings.

*FACTS AND PROCEDURAL HISTORY*

Appellant Dafna Noury, mother of then-16-month-old Max Zohar (collectively, the Zohars), took Max to the emergency room at Summerlin Hospital for treatment of a parrot bite on his right middle finger. The medical staff at Summerlin Hospital, including respondents Michael Zbiegien, M.D., and Rachel Lovera, R.N., irrigated Max's finger, repaired it, then dressed and bandaged the finger. Several days later, Dr.

Zbiegien and a nurse examined Max's finger again, and Noury asserts that they only removed and reapplied the outer dressing while the original wound dressing was left in place. When Max returned several days later to have the dressing removed, the Zohars allege that the hospital staff was unable to remove the inner dressing from Max's finger because it was stuck to Max's laceration. As a result, the dressings had to be soaked off. Once the staff removed the dressing, they noted that Max's finger was discolored. The emergency team consulted two hand specialists—who are not parties to this appeal—who noted that Max's finger was "dusky," swollen, and had "venous/arterial flow compromise." Max underwent a series of surgeries but eventually required a partial amputation of his finger.

The Zohars filed a medical malpractice complaint against multiple defendants, including Summerlin Hospital Medical Center, Zbiegien, and Lovera, as well as EmCare, Inc.; EmCare Physician Services, Inc.; and EmCare Physician Providers, Inc. (collectively, the EmCare entities).[1] The Zohars' complaint asserted claims of medical malpractice and professional negligence against Zbiegien and Lovera, as well as vicarious liability against the EmCare entities. The Zohars attached an expert affidavit of Burton Bentley II, M.D., F.A.A.E.M., to the complaint pursuant to NRS 41A.071. Dr. Bentley's affidavit stated that, to a reasonable degree of medical probability, the medical staff in the emergency department at Summerlin Hospital breached the standard of care when Max's finger was dressed too tightly. Dr. Bentley

---

[1]The EmCare entities appear to be related entities within Zbiegien's physicians group.

chronologically described Max's treatment and summarized the relevant medical records and photos that were the basis of his opinions. The affidavit specified the allegedly negligent activities of several individuals, as well as the activities of "the staff of the emergency department of Summerlin Hospital Medical Center, including but not limited to the responsible physician or physicians, nurse or nurses, and/or ancillary emergency department staff."[2] The affidavit did not identify Zbiegien, Lovera, or the EmCare entities by name.

Zbiegien, Lovera, and the EmCare entities filed motions to dismiss, arguing that Dr. Bentley's affidavit was deficient because it did not specifically name them as negligent parties.[3] The Zohars opposed the motions, arguing that the affidavit, when read together with the complaint, properly supported all allegations contained in the complaint. In the alternative, the Zohars requested leave to amend their complaint and expert affidavit. The district court granted the motions to dismiss and denied the Zohars' motion to amend.[4] The Zohars now appeal.

_____

[2]Dr. Bentley also noted that he would need further discovery to precisely implicate a single treatment date as having been more causative than the others.

[3]Summerlin Hospital also moved to dismiss. The district court denied Summerlin Hospital's motion to dismiss because it found that Summerlin Hospital was properly named in the affidavit. Thus, the Zohars' claims against Summerlin Hospital are still pending in the district court.

[4]The district court found that the Zohars knew of Zbiegien's and Lovera's identities and actions, "given the medical records at their disposal and as evidenced by their naming of such parties in their
*continued on next page . . .*

## DISCUSSION

*The district court erred in determining that the Zohars' expert affidavit was inadequate to support the allegations of medical malpractice*

We review a district court order granting a motion to dismiss de novo. *Munda v. Summerlin Life & Health Ins. Co.*, 127 Nev. ___, ___, 267 P.3d 771, 774 (2011). Such an order will be affirmed only where "'it appears beyond a doubt that the plaintiff could prove no set of facts . . . [that] would entitle him [or her] to relief.'" *Id.* (quoting *Vacation Vill., Inc. v. Hitachi Am., Ltd.*, 110 Nev. 481, 484, 874 P.2d 744, 746 (1994)).

Similarly, we review issues of statutory construction de novo. *Pub. Agency Comp. Trust v. Blake*, 127 Nev. ___, ___, 265 P.3d 694, 696 (2011). If a statute is clear on its face, we will not look beyond its plain language. *Wheble v. Eighth Judicial Dist. Court*, 128 Nev. ___, ___, 272 P.3d 134, 136 (2012). But when a statute is susceptible to more than one reasonable interpretation, it is ambiguous, and this court must resolve that ambiguity by looking to the statute's legislative history and "construing the statute in a manner that conforms to reason and public policy." *Great Basin Water Network v. Taylor*, 126 Nev. 187, 196, 234 P.3d 912, 918 (2010).

NRS 41A.071 requires that a medical malpractice action must be filed with *"an affidavit, supporting the allegations contained in the action."* (Emphasis added.) NRS Chapter 41A does not, however, define

---

*. . . continued*

[c]omplaint, however, their expert failed to identify either party by name or to address either's care with any specificity within his affidavit."

the level of detail required to adequately "support[]" a plaintiff's allegations. Looking to other sources, the word "support" has varying definitions. *Black's Law Dictionary* defines support as "[b]asis or foundation." *Black's Law Dictionary* 1577-78 (9th ed. 2009). Additionally, support has been defined as "to provide with substantiation," "corroborate," or "to . . . serve as a foundation." *Merriam-Webster's Collegiate Dictionary* 1256 (11th ed. 2007). Given these definitions, and that the statute does not define what level of support is required, we conclude that the term "support" in NRS 41A.071 is ambiguous because it may reasonably be interpreted as merely providing some substantiation or foundation for the underlying facts within the complaint, or it may also be interpreted to require that the affidavit corroborate every fact within the complaint, including individual defendant identities. In light of this ambiguity, we will evaluate the statute's legislative history and attempt to construe it in a manner that conforms to reason and public policy. *See Great Basin*, 126 Nev. at 196, 234 P.3d at 918.

NRS 41A.071 was enacted in 2002 as part of a special legislative session that was called to address a medical malpractice insurance crisis in Nevada. *See Borger v. Eighth Judicial Dist. Court*, 120 Nev. 1021, 1023, 102 P.3d 600, 602 (2004). At the time, doctors claimed that medical malpractice "insurers were quoting premium increases of 300 to 500 percent." Hearing on S.B. 2 Before the Senate Comm. of the Whole, 18th Special Sess. (Nev., July 29, 2002) (statement of Governor Guinn).

The Legislature addressed the medical malpractice insurance crisis, in part, by capping noneconomic damages, requiring settlement conferences, and supplanting the existing malpractice screening panels with the expert affidavit requirement under NRS 41A.071. *Borger*, 120

Nev. at 1023-24, 1026, 102 P.3d at 602, 604. NRS 41A.071's affidavit requirement was implemented "'to lower costs, reduce frivolous lawsuits, and ensure that medical malpractice actions are filed in good faith based upon competent expert medical opinion.'"[5] *Washoe Med. Ctr. v. Second Judicial Dist. Court*, 122 Nev. 1298, 1304, 148 P.3d 790, 794 (2006) (quoting *Szydel v. Markman*, 121 Nev. 453, 459, 117 P.3d 200, 204 (2005)). The Governor of Nevada stated that the legislation "balance[d] the needs of injured parties, patients who seek the best medical care available and the doctors who must purchase and carry insurance to protect themselves and their patients." Hearing on S.B. 2 Before the Senate Comm. of the Whole, 18th Special Sess. (Nev., July 29, 2002) (statement of Governor Guinn).

As noted above, the legislative history of NRS 41A.071 demonstrates that it was enacted to deter baseless medical malpractice litigation, fast track medical malpractice cases, and encourage doctors to practice in Nevada while also respecting the injured plaintiff's right to litigate his or her case and receive full compensation for his or her injuries. The legislative history does not reveal, however, the precise level of specificity that an expert affidavit must include in order to "support" the allegations in a medical malpractice claim under NRS 41A.071. In light of this uncertainty, we are left to construe the statute in a manner that

---

[5]Additionally, the affidavit of merit was intended to make up for the perceived inefficiency of malpractice screening panels by shortening the time necessary to litigate medical malpractice cases, thereby driving down the costs of litigation for all parties. *See* Hearing on A.B. 1 Before the Comm. on Med. Malpractice Issues, 18th Special Sess. (Nev., July 30, 2002) (statement of Assemblywoman Buckley).

conforms to reason and public policy and thus continues to balance the interests of both the doctors and the injured patients. *See Great Basin*, 126 Nev. at 196, 234 P.3d at 918.

Here, the Zohars argue that when the affidavit and complaint are read together, it is clear that Dr. Bentley is referring to Zbiegien, Lovera, and the EmCare entities. The Zohars note that Max was treated in the emergency room over the course of several different visits, making it difficult, if not impossible, for an expert such as Dr. Bentley to know, before discovery, the name of every doctor, nurse, or staff member who was responsible for Max's treatment. Thus, the Zohars argue that when Dr. Bentley's affidavit is read together with their complaint, it is clear that all defendants received sufficient notice of the nature and basis of the Zohars' medical malpractice claims against them and that the lawsuit is not frivolous or filed in bad faith. Zbiegien, Lovera, and the EmCare entities argue that Dr. Bentley's affidavit does not support the complaint as required by NRS 41A.071 because it fails to reference or attribute any negligent acts to them individually by name. Thus, the crux of this issue is whether courts should require a plaintiff's NRS 41A.071 affidavit of merit to independently state every fact required to demonstrate a cause of action for medical malpractice, or whether courts should read the affidavit of merit together with the complaint to "ensure that medical malpractice actions are filed in good faith based upon competent expert medical opinion." *Washoe Med. Ctr.*, 122 Nev. at 1304, 148 P.3d at 794 (internal quotation omitted).

We conclude that reason and public policy dictate that courts should read the complaint and the plaintiff's NRS 41A.071 expert affidavit together when determining whether the expert affidavit meets the

requirements of NRS 41A.071. *See Great Basin*, 126 Nev. at 196, 234 P.3d at 918; *Washoe Med. Ctr.*, 122 Nev. at 1304, 148 P.3d at 794; *see also* NRCP 10(c). Such a reading ensures that our courts are dismissing only frivolous cases, furthers the purposes of our notice-pleading standard, and comports with Nevada's Rules of Civil Procedure. *See* NRCP 10(c) (exhibits to pleadings are considered part thereof); *Borger*, 120 Nev. at 1028, 102 P.3d at 605. As we have previously acknowledged, the NRS 41A.071 affidavit requirement is a preliminary procedural rule subject to the notice-pleading standard, and thus, it must be "liberally construe[d] ... in a manner that is consistent with our NRCP 12 jurisprudence." *Borger*, 120 Nev. at 1028, 102 P.3d at 605 (recognizing that "NRS 41A.071 governs the threshold requirements for initial pleadings in medical malpractice cases, not the ultimate trial of such matters"). Given that the purpose of a complaint is to "give fair notice of the nature and basis of a legally sufficient claim and the relief requested," *Breliant v. Preferred Equities Corp.*, 109 Nev. 842, 846, 858 P.2d 1258, 1260 (1993), and the purpose of the expert affidavit is to further enable the trial court to determine whether the medical malpractice claims within the complaint have merit, both policy considerations are served when the sufficiency of the affidavit is determined by reading it in conjunction with the complaint.

Additionally, we are hesitant to adopt such a strict interpretation of NRS 41A.071 as is advocated by respondents because at this preliminary point in the proceedings, the parties have conducted little to no formal discovery. Such a harsh interpretation would undoubtedly deny many litigants the opportunity to recover against negligent parties when the medical records available to the plaintiff do not identify a negligent actor by name—especially in res ispa loquitur cases in which the

parties are simply unable to identify the negligent actor. The majority of other states that require an affidavit of merit or similar type of expert substantiation do not require that the affidavit or substantiation independently establish a claim of medical malpractice against each defendant. *See, e.g., Gadd v. Wilson & Co.*, 416 S.E.2d 285, 286 (Ga. 1992) (negligence need not be explicitly linked to the defendant); *Kearney v. Berger*, 7 A.3d 593, 604 (Md. 2010) (omitting the name of the defendant "would not cause [the doctor, other defendants], or the courts any difficulty in evaluating whether [the doctor] violated the standard of care"); *Barber v. Catholic Health Initiatives, Inc.*, 951 A.2d 857, 872 (Md. Ct. Spec. App. 2008) (although the certificate did not explicitly identify the defendants, when read together with the other documents filed, "the [c]ertificate unequivocally identified all of the [defendants]"); *Ellefson v. Earnshaw*, 499 N.W.2d 112, 114-15 (N.D. 1993) (concluding that North Dakota's functionally similar statute "provides for a preliminary screening of totally unsupported cases [but] does not require the plaintiff to complete discovery or to establish a prima facie case during that accelerated time frame"; rather, the expert's affidavit is sufficient if it "tends to corroborate and support . . . allegations of . . . negligence"). Even in instances with multiple defendants, courts have not required individual names within the affidavit. *See Galik v. Clara Maass Med. Ctr.*, 771 A.2d 1141, 1152 (N.J. 2001) (referring to a radiologist by his job title and the timing of treatment was sufficient to identify the defendant radiologist).[6]

---

[6]Even the few states that require the affidavit of merit to state an independent claim of medical malpractice against each and every defendant offer opportunities to cure deficiencies. *See Scoresby v.*

*continued on next page . . .*

As a result, we conclude that the district court should have read Dr. Bentley's affidavit together with the Zohars' complaint to determine whether the affidavit satisfied the requirements of NRS 41A.071. Under such a reading, we conclude that the Zohars' complaint is not frivolous or filed in bad faith, and Zbiegien, Lovera, and the EmCare entities were on sufficient notice of the nature and basis of the Zohars' medical malpractice claims against them. That is not to say that every affidavit of merit that fails to identify specific defendants will satisfy NRS 41A.071. Rather, the district court in each instance should evaluate the factual allegations contained in both the affidavit and the medical malpractice complaint to determine whether the affidavit adequately supports or corroborates the plaintiff's allegations. Here, the complaint

---

*. . . continued*

*Santillan*, 346 S.W.3d 546, 557 (Tex. 2011); *Hinchman v. Gillette*, 618 S.E.2d 387, 394-95 (W. Va. 2005). In Texas, every expert report, even if substantively deficient, is eligible for the statutory extension to cure any deficiencies so long as it was timely served, includes a qualified expert's opinion that the claim has merit, and implicates the defendant's conduct. Tex. Civ. Prac. & Rem. Code Ann. § 74.351 (West 2013); *Scoresby*, 346 S.W.3d at 557. In West Virginia, a defendant cannot challenge the legal sufficiency of a certificate of merit unless the plaintiff has "been given written and specific notice of, and an opportunity to address and correct, the alleged defects and insufficiencies." *Hinchman*, 618 S.E.2d at 394-95. Thus, even the states with the most exacting requirements ensure that medical malpractice plaintiffs are given an opportunity to amend or cure their claims so that only baseless and frivolous claims are excluded. Given that NRS 41A.071—unlike the statute in Texas—*requires* dismissal for noncompliance with the affidavit-of-merit requirement, *Washoe Med. Ctr.*, 122 Nev. at 1305, 148 P.3d at 795, we conclude that such a harsh interpretation would unreasonably deny injured plaintiffs the opportunity to seek redress against negligent parties.

stated that upon Max's initial arrival at Summerlin Hospital, Zbiegien and Lovera treated and dressed Max's finger, and that Zbiegien and a Doe nurse examined and treated Max's finger on the Zohars' second trip to Summerlin Hospital. When these allegations are read together with Dr. Bentley's chronological description of Max's treatment and his opinion that "the medical staff in the emergency department of Summerlin Hospital Medical Center breached the standard of care in their treatment of Max Zohar through the inappropriately tight application of a wound dressing and/or bandage," it is clear that Zbiegien, Lovera, and the EmCare entities received sufficient notice of the nature and basis of the medical malpractice claims against them, and that the district court had sufficient information to determine whether the action should be allowed to proceed.[7]

## CONCLUSION

We conclude that courts should read a medical malpractice complaint and the plaintiff's NRS 41A.071 expert affidavit together when determining whether the affidavit satisfies the requirements of NRS 41A.071. Thus, an expert affidavit of merit that fails to specifically name allegedly negligent defendants may still comply with NRS 41A.071 as to the unnamed parties if it is clear that the defendants and the court received sufficient notice of the nature and basis of the medical malpractice claims. As a result, we conclude that the district court erred in finding that Dr. Bentley's expert affidavit was inadequate to support the Zohars' allegations of medical malpractice against respondents. We

---

[7]In light of this disposition, we need not address the parties' remaining arguments.

therefore reverse the district court's order of dismissal and remand this case for further proceedings consistent with this opinion.

_____, C.J.
Gibbons

We concur:

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta