133 Nev., Advance Opinion 108

# IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| FRANK MILFORD PECK,<br>Appellant,<br>vs.<br>DAVID R. ZIPF, M.D.; AND MICHAEL<br>D. BARNUM, M.D.,<br>Respondents. | No. 68664<br><br>**FILED**<br><br>DEC 28 2017<br><br>ELIZABETH A. BROWN<br>CLERK OF SUPREME COURT<br>BY<br>CHIEF DEPUTY CLERK |

Appeal from a district court judgment on the pleadings in a medical malpractice action. Eighth Judicial District Court, Clark County; David B. Barker, Judge.

*Affirmed.*

Holley, Driggs, Walch, Fine, Wray, Puzey & Thompson and Rachel E. Donn and Andrea M. Gandara, Las Vegas,
for Appellant Frank Milford Peck.

Alverson Taylor Mortensen & Sanders and David J. Mortensen, Candace C. Herling, and Brigette E. Foley, Las Vegas,
for Respondent Michael D. Barnum, M.D.

McCormick, Barstow, Sheppard, Wayte & Carruth, LLP, and Jill M. Chase and Dylan P. Todd, Las Vegas,
for Respondent David R. Zipf, M.D.

BEFORE HARDESTY, PARRAGUIRRE and STIGLICH, JJ.

SUPREME COURT<br>OF<br>NEVADA<br><br>(O) 1947A

17-44708

## OPINION

By the Court, HARDESTY, J.:

NRS 41A.071 provides that a district court must dismiss a plaintiff's medical malpractice complaint if it is not accompanied by an expert affidavit. However, under NRS 41A.100(1), a plaintiff need not attach an expert affidavit for a res ipsa loquitur claim. In this appeal, we consider whether either statutory res ipsa loquitur or the common knowledge res ipsa loquitur doctrine provides an exception to the expert affidavit requirement for suit. We also must determine whether NRS 41A.071 is unconstitutional under the Equal Protection Clause or Due Process Clause, facially, or as applied to inmates or indigent persons.

We reiterate that the enumerated res ipsa loquitur exceptions in NRS 41A.100 supersede the common knowledge res ipsa loquitur doctrine. Because appellant's complaint failed to show that any object left in his body was the result of "surgery," the appellant's complaint did not satisfy the elements for the statutory exception of res ipsa loquitur. Thus, appellant's complaint was properly dismissed for lack of an expert affidavit. We further conclude that NRS 41A.071 does not violate equal protection or due process.

## FACTS AND PROCEDURAL HISTORY

Appellant Frank Peck is, and has at all relevant times been, incarcerated at High Desert State Prison in Indian Springs. In December 2013, Peck was admitted to Valley Hospital. While at the hospital, Peck was under the care of respondents, Dr. David R. Zipf and Dr. Michael D. Barnum. In his complaint against the two doctors, Peck claimed that after his release from the hospital, he discovered a foreign object under the skin of his left hand.

In particular, Peck alleged one cause of action for medical malpractice claiming that Dr. Zipf and Dr. Barnum left a needle in his hand. In his complaint, Peck cited NRS 41A.100(1)(a) and *Fernandez v. Admirand*, 108 Nev. 963, 969, 843 P.2d 354, 358 (1992), in which we referenced NRS 41A.100(1) and recognized that expert testimony may not be necessary in medical malpractice cases where the alleged wrongdoing "is a matter of common knowledge of laymen." While Peck referenced the res ipsa loquitur doctrine, he did not claim that he had surgery. Doctors Zipf and Barnum moved for judgment on the pleadings, and the district court granted their motion, concluding that Peck's complaint did not meet the requirements of NRS 41A.100(1)(a), and thus, his failure to attach an affidavit of a medical expert to his complaint under NRS 41A.071 was fatal.

## DISCUSSION

On appeal, Peck argues that the district court erred in dismissing his complaint for lack of an affidavit because his complaint did not require an affidavit under NRS 41A.100(1)(a). Peck further contends that even if he did not meet the requirements for a statutory res ipsa loquitur cause of action, his claim falls under the common knowledge res ipsa loquitur doctrine at common law. Peck also argues that the affidavit requirement in NRS 41A.071 violates his equal protection rights and deprives him of due process. We disagree with Peck's contentions and affirm the district court.

*Standard of review*

The district court may grant a motion for judgment on the pleadings "when material facts are not in dispute and the movant is entitled to judgment as a matter of law." *Bonicamp v. Vazquez*, 120 Nev. 377, 379, 91 P.3d 584, 585 (2004). A judgment on the pleadings is reviewed in the same manner as a dismissal under NRCP 12(b)(5). *See Sadler v. Pacificare*

Supreme Court
of
Nevada

(0) 1947A

3

*of Nev., Inc.*, 130 Nev., Adv. Op. 98, 340 P.3d 1264, 1266 (2014). Thus, this court accepts the factual allegations in the complaint as true and draws all inferences in favor of the nonmoving party. *Buzz Stew, LLC v. City of N. Las Vegas*, 124 Nev. 224, 227-28, 181 P.3d 670, 672 (2008) (stating the standard of review for a motion to dismiss pursuant to NRCP 12(b)(5)). "[Q]uestions of law, including questions of constitutional interpretation and statutory construction," are reviewed de novo. *Lawrence v. Clark Cty.*, 127 Nev. 390, 393, 254 P.3d 606, 608 (2011).

*NRS 41A.071's affidavit requirement applies to Peck's complaint*

Under NRS 41A.071, "a medical malpractice complaint filed without a supporting medical expert affidavit is void ab initio." *Washoe Med. Ctr. v. Second Judicial Dist. Court*, 122 Nev. 1298, 1304, 148 P.3d 790, 794 (2006). However, a medical expert's affidavit is not required if the claim falls into one of the enumerated res ipsa loquitur exceptions under NRS 41A.100(1). *Szydel v. Markman*, 121 Nev. 453, 459, 117 P.3d 200, 204 (2005). Peck did not submit an affidavit to the district court with his complaint. Thus, his complaint is "void ab initio" unless it falls into one of the enumerated exceptions to the affidavit requirement. *Washoe Med. Ctr.*, 122 Nev. at 1304, 148 P.3d at 794; *see also* NRS 41A.100(1); *Szydel*, 121 Nev. at 459, 117 P.3d at 204.

NRS 41A.100(1)(a) provides that medical expert evidence is not required when "[a] foreign substance other than medication or a prosthetic device was unintentionally left within the body of a patient following *surgery*." In his complaint, Peck alleged that a foreign object was left in his left hand and that relief was warranted under NRS 41A.100(1)(a); however, he did not describe the medical procedure he had or allege that the object was left in his body following a surgery. At oral argument, counsel for Peck argued that the insertion of an intravenous (IV) needle constitutes surgery

or, alternatively, discovery was necessary to determine whether a surgery was taking place at the time the foreign object was allegedly left in Peck's hand.[1] On the other hand, counsel for Dr. Zipf argued that the insertion of an IV needle does not constitute surgery, and thus, Peck did not allege a cause of action under NRS 41A.100(1)(a). The word "surgery" is not defined in NRS 41A.100 or otherwise in NRS Chapter 41A. *See generally* NRS 41A.003-.120. Thus, we must determine what the word "surgery" means in NRS 41A.100(1)(a).

This court reviews issues of statutory construction de novo. *Sonia F. v. Eighth Judicial Dist. Court*, 125 Nev. 495, 499, 215 P.3d 705, 707 (2009). Where a statute's plain language is clear, this court will not look beyond the plain language. *Id.* However, where a term in a statute is not defined, this court will look to its plain and ordinary meaning. *Jones v.*

---

[1] In *Baxter v. Dignity Health*, 131 Nev., Adv. Op. 76, 357 P.3d 927, 928, 931 (2015), we held that a complaint was not void for lack of a physically attached medical expert affidavit where that affidavit was filed the day after the complaint, and the complaint incorporated by reference the pre-existing affidavit. At no time did Peck inform the district court that he had obtained an affidavit, nor did Peck incorporate by reference a medical expert affidavit in his complaint. Rather, Peck filed in this court a medical expert affidavit from a radiologist technician in which the radiologist technician only stated that the foreign object in Peck's hand may not appear on an x-ray. Unlike the factual circumstances that led to our holding in *Baxter*, Peck obtained this affidavit after the district court dismissed Peck's complaint and while he was pursuing this appeal. We note that Peck included his medical records with his opposition to the motion for judgment on the pleadings. The medical records indicate that Peck had a lumbar puncture, which demonstrated that he had viral meningitis. While in the hospital, Peck "went into an acute respiratory failure, requiring intubation and mechanical ventilation." Peck never argued that these medical procedures were "operative measures" or constituted "surgery" as required under NRS 41A.100.

SUPREME COURT
OF
NEVADA

(O) 1947A

5

*Nev., State Bd. of Med. Exam'rs*, 131 Nev., Adv. Op. 4, 342 P.3d 50, 52 (2015). *Black's Law Dictionary* defines "surgery" as "that branch of medical science which treats of mechanical or operative measures for healing diseases, deformities, disorders, or injuries." *Surgery, Black's Law Dictionary* (6th ed. 1990). NAC 449.9743, a regulation pertaining to the operation and licensing of surgical centers, defines "surgery" as "the treatment of a human being by operative methods." These definitions support Doctors Zipf and Barnum's contention that the word "surgery" in NRS 41A.100(1)(a) does not include the insertion of an IV needle because that is not an "operative measure." Thus, Peck's medical malpractice claim required a medical expert's affidavit. *See Washoe Med. Ctr.*, 122 Nev. at 1304, 148 P.3d at 794.

Peck argues that NRS 41A.100(1) can be read separately from subsection (a) so that an allegation of surgery is not required. However, in reading the statute as a whole, NRS 41A.100 clearly states that an affidavit is not required "in any one or more of the following circumstances . . . ," and those enumerated res ipsa loquitur exceptions are listed in subsections (1)(a)-(e), one of which being that an object was left in the body following surgery. Moreover, Peck specifically identified this exception in NRS 41A.100(1)(a) in his complaint and did not reference any of the other enumerated exceptions. Accordingly, NRS 41A.100 requires that an expert affidavit be filed with Peck's complaint.

*NRS 41A.100 codified and replaced the common law res ipsa loquitur doctrine*

Peck argues that a medical expert affidavit was not required under the common law res ipsa loquitur doctrine, and thus, the district court erred in dismissing his complaint. At oral argument, counsel for Peck argued that Peck stated a claim for common law res ipsa loquitur because

Supreme Court
of
Nevada

(O) 1947A

6

he cited *Fernandez v. Admirand*, 108 Nev. 963, 843 P.2d 354 (1992), which Peck's counsel argued is the case that created the common law res ipsa loquitur doctrine. However, while we stated in *Fernandez* that expert testimony is necessary in a medical malpractice case "unless the propriety of the treatment, or the lack of it, is a matter of common knowledge of laymen," we specifically referenced NRS 41A.100(1) for this assertion. 108 Nev. at 969, 843 P.2d at 358. Further, we have held that, in drafting NRS 41A.100(1), the Legislature specifically codified the res ipsa loquitur doctrine and determined that in those specific enumerated circumstances, a medical affidavit is not required. *Johnson v. Egtedar*, 112 Nev. 428, 433, 915 P.2d 271, 274 (1996) ("We believe the [L]egislature intended NRS 41A.100 to replace, rather than supplement, the classic res ipsa loquitur formulation in medical malpractice cases where it is factually applicable."); *see also Szydel*, 121 Nev. at 459-60, 117 P.3d at 204-05 (stating that any res ipsa claim filed without an expert affidavit must meet the prima facie requirements for a res ipsa loquitur case as set forth in NRS 41A.100(1)(a)-(e)); *Born v. Eisenman*, 114 Nev. 854, 859, 962 P.2d 1227, 1230 (1998) ("[T]he more traditional res ipsa loquitur doctrine has been replaced by NRS 41A.100."). Had the Legislature intended to allow medical malpractice claims to be filed without an expert affidavit in circumstances where a foreign object was left in the body during a procedure other than surgery, the Legislature would have codified those situations.

Moreover, we "avoid construing statutes so that any provision or clause is rendered meaningless." *In re Estate of Thomas*, 116 Nev. 492, 495, 998 P.2d 560, 562 (2000). Interpreting NRS 41A.100(1) as merely supplementing the common law and allowing claims where a foreign object is left in the body in a procedure other than surgery would render NRS

41A.100(1)(a) meaningless. Therefore, "there is a fair repugnance between the common law and the statute, and both cannot be carried into effect." *W. Indies, Inc. v. First Nat'l Bank of Nev.*, 67 Nev. 13, 32, 214 P.2d 144, 153 (1950) (internal quotation marks omitted).

*NRS 41A.071 does not violate equal protection or due process*

Peck argues that the medical expert affidavit requirement violates the Equal Protection and Due Process Clauses of the Nevada and federal Constitutions. Specifically, in his opening brief, Peck argues that NRS 41A.071 (1) "creates an unconstitutional distinction between medical malpractice plaintiffs and other negligence plaintiffs," (2) unconstitutionally prevents indigent plaintiffs from accessing the courts, and (3) unconstitutionally prevents inmates from prosecuting medical malpractice claims. Doctors Zipf and Barnum disagree.

"Statutes are presumed to be valid, and the challenger bears the burden of showing that a statute is unconstitutional. In order to meet that burden, the challenger must make a clear showing of invalidity." *Tam v. Eighth Judicial Dist. Court*, 131 Nev., Adv. Op. 80, 358 P.3d 234, 237-38 (2015) (internal quotation marks omitted). "When the law . . . does not implicate a suspect class or fundamental right, it will be upheld as long as it is rationally related to a legitimate government interest." *Zamora v. Price*, 125 Nev. 388, 395, 213 P.3d 490, 495 (2009).

*No unconstitutional distinction exists*

"[T]he right of malpractice plaintiffs to sue for damages caused by medical professionals does not involve a fundamental constitutional right." *Tam*, 131 Nev., Adv. Op. 80, 358 P.3d at 239 (alteration in original) (quoting *Barrett v. Baird*, 111 Nev. 1496, 1507, 908 P.2d 689, 697 (1995), *overruled on other grounds by Lioce v. Cohen*, 124 Nev. 1, 17, 174 P.3d 970, 980 (2008)). Nor does Peck argue that a suspect class is implicated. Thus,

NRS 41A.071 "need only be rationally related to a legitimate governmental purpose" to withstand a challenge based on equal protection or due process. *Id.*; *see also Arata v. Faubion*, 123 Nev. 153, 159, 161 P.3d 244, 248 (2007). "While the legislative history is helpful to understanding the purpose of enacting the statute, this court is not limited to the reasons expressed by the Legislature; rather, if any rational basis exists, or can be hypothesized, then the statute is constitutional." *Tam*, 131 Nev., Adv. Op. 80, 358 P.3d at 239 n.5.

"NRS 41A.071 was enacted in 2002 as part of a special legislative session that was called to address a medical malpractice insurance crisis in Nevada." *Zohar v. Zbiegien*, 130 Nev., Adv. Op. 74, 334 P.3d 402, 405 (2014). Doctors were concerned that insurance providers were quoting medical malpractice insurance premiums at drastically increasing rates. *Id.* By enacting NRS Chapter 41A, the Legislature intended "to deter baseless medical malpractice litigation, fast track medical malpractice cases, and encourage doctors to practice in Nevada while also respecting the injured plaintiff[']s right to litigate his or her case and receive full compensation for his or her injuries." *Id.* at 405-06.

A previous version of NRS Chapter 41A required that medical malpractice complaints be heard by a screening panel prior to being filed in the district court, and the panel's findings were admissible in the district court proceedings. *Borger v. Eighth Judicial Dist. Court*, 120 Nev. 1021, 1023, 102 P.3d 600, 602 (2004). In *Barrett v. Baird*, we determined that the screening panel provision was "rationally related to a legitimate governmental interest and [did] not violate equal protection." 111 Nev. at 1510-11, 908 P.2d at 699. The governmental interests related to the screening panel provision were "to minimize frivolous suits against doctors,

to encourage settlement, and to lower the cost of malpractice premiums and health care." *Id.* at 1508, 908 P.2d at 697 (internal quotation marks omitted).

The Legislature replaced the screening panel provision with the medical expert affidavit requirement. *Borger*, 120 Nev. at 1026, 102 P.3d at 604 ("[T]he expert affidavit requirements of NRS 41A.071 are designed to account for the abolition of the screening panels and to ensure that parties file malpractice cases in good faith, *i.e.*, to prevent the filing of frivolous lawsuits."). The Legislature's intent in requiring medical expert affidavits was to "lower costs, reduce frivolous lawsuits, and ensure that medical malpractice actions are filed in good faith based upon competent expert medical opinion." *Washoe Med. Ctr.*, 122 Nev. at 1304, 148 P.3d at 794 (internal quotation marks omitted). "According to NRS 41A.071's legislative history, the requirement that a complaint be filed with a medical expert affidavit was designed to streamline and expedite medical malpractice cases and lower overall costs, and the Legislature was concerned with strengthening the requirements for expert witnesses." *Id.* Under the former screening panel provision, the plaintiff could still proceed to trial if the panel concluded that the medical provider was not negligent. *See Borger*, 120 Nev. at 1023, 102 P.3d at 602. Under the medical expert affidavit requirement, however, the lack of an affidavit requires dismissal of the complaint. *See Washoe Med. Ctr.*, 122 Nev. at 1304, 148 P.3d at 794.

We conclude that this change does not impact our analysis under rational basis. As our prior decisions in *Barrett, Washoe Medical Center*, and *Zohar* establish, the Legislature's regulation of Nevada's health care system through the medical expert affidavit requirement in NRS 41A.071 is rationally related to the legitimate governmental interest of

 

managing what was considered a "medical malpractice insurance crisis in Nevada." *Zohar*, 130 Nev., Adv. Op. 74, 334 P.3d at 405.

Peck urges this court to adopt the analysis of *Zeier v. Zimmer, Inc.*, 152 P.3d 861, 868 (Okla. 2006), in which the Supreme Court of Oklahoma held unconstitutional a similar affidavit requirement because the statute distinguished between medical malpractice plaintiffs and other negligence plaintiffs. However, the court invalidated the statute based on a unique provision of the Oklahoma Constitution that prohibits "special laws regulating the practice or jurisdiction of, or changing the rules of evidence in judicial proceedings or inquiry before the courts." *Id.* at 868-69. Moreover, Peck does not argue that medical malpractice plaintiffs are a suspect class or that there is a fundamental right to medical malpractice damages. *See Barrett*, 111 Nev. at 1509, 908 P.2d at 698. Accordingly, we are not persuaded by *Zeier*.

*Court access remains reasonably unfettered*

Peck relies on our decision in *Barnes v. Eighth Judicial District Court*, 103 Nev. 679, 748 P.2d 483 (1987), for the proposition that NRS 41A.071 is overbroad and unconstitutionally restricts an indigent or incarcerated person's access to the courts by imposing a monetary barrier. In *Barnes*, three inmates attempted to file complaints against their attorneys for legal malpractice. 103 Nev. at 680, 748 P.2d at 484. The inmates filed motions under NRS 12.015(1), which allowed indigent plaintiffs to proceed without paying court costs, but the district court "denied the motions to proceed in forma pauperis because they were not supported by the affidavit of an attorney stating that the complaints had merit as required by NRS 12.015(1)." *Id.* at 680, 748 P.2d at 485.

 

The purpose of the attorney affidavit requirement was "to spare the state the expense of financing frivolous lawsuits filed by indigent persons." *Id.* at 684, 748 P.2d at 487. We determined that the statute also may have worked "to screen out meritorious actions that would otherwise be filed by persons who [could not] afford, or [were] otherwise precluded from obtaining, the required certificate of an attorney." *Id.* We further explained that "the classification scheme created by the statute [was] arbitrary and irrational" and "too broad in its sweep." *Id.* Thus, we determined that "by conditioning the waiver of filing fees on an indigent's ability to obtain the certificate of an attorney that the indigent's cause of action or defense has merit, NRS 12.015 violates the equal protection guarantees contained in the Nevada and United States Constitutions." *Id.*

*Barnes* is distinguishable from Peck's case because NRS 41A.071 requires a medical expert affidavit for medical malpractice suits filed by anyone—not just indigent or incarcerated persons—whereas NRS 12.015 only required an affidavit for indigent plaintiffs. Moreover, "although an indigent has a right of reasonable access to the courts, the right of access is not unrestricted." *Id.* at 682, 748 P.2d at 486. While an affidavit is required to pursue medical malpractice claims, the lack of an affidavit does not preclude indigent plaintiffs specifically from accessing the courts in general. Thus, NRS 41A.071 does not create a classification scheme that violates equal protection.

*Inmates are not unconstitutionally precluded from pursuing medical malpractice claims*

Peck also argues that the affidavit requirement is unconstitutional under *Boddie v. Connecticut*, 401 U.S. 371 (1971). In that case, the Supreme Court determined that the imposition of court costs to indigent plaintiffs seeking divorces violated equal protection. However, the

Court concluded that because of the importance of the "marriage relationship in this society's hierarchy of values and the concomitant state monopolization of the means for legally dissolving this relationship, due process does prohibit a State from denying, solely because of inability to pay, access to its courts to individuals who seek judicial dissolution of their marriages." *Boddie*, 401 U.S. at 374. Here, medical malpractice damages do not share the same hierarchy in value in our society as marriage does, and indigent or incarcerated individuals are not precluded from obtaining an expert opinion solely on the basis of their indigence or incarceration. Moreover, the state is not imposing a court cost or fee under NRS 41A.071. Accordingly, Peck's reliance on *Boddie* is misplaced.

Peck further relies on *Bounds v. Smith*, 430 U.S. 817 (1977), for the notion that prisoners have a constitutional right of access to the courts. We agree and have held the same. *See Miller v. Evans*, 108 Nev. 372, 374, 832 P.2d 786, 787 (1992). However, this right does not include unfettered access to pursue all civil actions. In *Lewis v. Casey*, the Supreme Court clarified *Bounds* and explained that the right of access to the courts requires providing resources "that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." 518 U.S. 343, 355 (1996). Moreover, inmates are not a suspect class, and there is no fundamental right to medical malpractice damages. *See Glauner v. Miller*, 184 F.3d 1053, 1054 (9th Cir. 1999) (noting that inmates are not a suspect class); *Tam*, 131 Nev., Adv. Op. 80, 358 P.3d at 239 (determining that there is no fundamental right to

medical malpractice damages). Thus, NRS 41A.071 need only meet rational basis, which we conclude it does.

Other jurisdictions with expert affidavit requirements in medical malpractice actions agree that inmates and indigent plaintiffs are not excused from the affidavit requirements. *See Perry v. Stanley*, 83 S.W.3d 819, 825 (Tex. App. 2002) (holding that the requirement to file a medical affidavit with a complaint can properly be applied to inmates because they bear the burden of proof at trial, which requires expert testimony); *Gill v. Russo*, 39 S.W.3d 717, 718-19 (Tex. App. 2001) (holding that a statute requiring an expert report to be filed within 180 days of an inmate's filing of a medical malpractice suit did not violate the open courts provision of the Texas Constitution, despite the inmate's arguments that he could not interview physicians from prison and did not have enough money to obtain the reports); *see also O'Hanrahan v. Moore*, 731 So. 2d 95, 96-97 (Fla. Dist. Ct. App. 1999) (rejecting a prisoner's request to declare unconstitutional a pre-suit requirement for a medical expert opinion to initiate his medical malpractice action); *Ledger v. Ohio Dep't of Rehab. & Corr.*, 609 N.E.2d 590, 593-95 (Ohio Ct. App. 1992) (holding that an inmate's medical malpractice action was properly dismissed with prejudice for failure to meet that state's statutory affidavit requirement). Notably, Peck was able to obtain a medical expert affidavit after submitting his complaint, which demonstrates that his indigence and incarceration did not prevent him from acquiring the requisite documents needed for a medical malpractice claim.

Accordingly, we conclude that NRS 41A.071 is rationally related to a legitimate governmental interest and does not violate equal protection or due process requirements.

## CONCLUSION

Based on the foregoing, we affirm the district court's order granting Doctors Zipf's and Barnum's motion for judgment on the pleadings because Peck failed to include a medical expert affidavit with his medical malpractice complaint.

_____, J.
Hardesty

We concur:

_____, J.
Parraguirre

_____, J.
Stiglich